[No. S077866. June 25, 2001.]

THE PEOPLE Plaintiff and Respondent, v.
TRAVIS SIMON, JR., Defendant and Appellant.

**COUNSEL**

L. Richard Braucher, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson and David P. Druliner, Chief Assistant Attorneys General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver, Joan Killeen and Ross C. Moody, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GEORGE, C. J.**—Defendant Travis Simon, Jr., was convicted of two counts of assault with a deadly weapon upon a peace officer (Pen. Code, § 245, subd. (c)) after a trial in Contra Costa County. In the Court of Appeal, defendant challenged his convictions on the ground (among others) that the trial court erred in failing either to direct a verdict in his favor or to instruct the jury on the question of venue—i.e., the propriety of the location of the trial. The Court of Appeal rejected the claim, concluding that defendant had waived any objection to venue in Contra Costa County by failing to raise such an objection at the preliminary hearing. In discussing the venue issue, however, the Court of Appeal recognized that past California appellate decisions have been inconsistent regarding the proper procedure for raising, preserving, and resolving a claim of improper venue in a felony prosecution, and the Court of Appeal urged this court to provide guidance on the matter both for this case and for future proceedings. We granted review in order to provide such guidance, limiting briefing and argument to the procedural and substantive issues relating to the question of venue.

For the reasons discussed below, we conclude that pursuant to the general legal doctrine that a party may forfeit a right by failing to assert it in a timely fashion, a defendant in a felony proceeding forfeits a claim of improper venue when he or she fails specifically to raise such an objection prior to the commencement of trial. As we shall explain, in light of the fundamental purposes underlying criminal venue provisions, the interests of both the

accused and the state support a requirement that any objection to the proposed location of a felony trial must be specifically raised prior to the commencement of trial, *before* the defendant is required to undergo the rigors and hardship of standing trial in an assertedly improper locale, and *before* the state incurs the time and expense of conducting a trial in that county. Although we further conclude that, in light of the confusion in the prior California case law, our holding with regard to the proper procedure for raising an objection to venue shall apply only prospectively, we nonetheless determine that the Court of Appeal correctly rejected defendant's venue claims.

Accordingly, we shall affirm the judgment of the Court of Appeal.

I

Neither party takes issue with the statement of facts set forth in the Court of Appeal's opinion in this matter, and because that narrative clearly and accurately summarizes the pertinent facts as disclosed by the record, we adopt, with minor stylistic changes, that portion of the Court of Appeal's opinion:

A. *The Events of January 19, 1997.*

At approximately 1:00 a.m. on January 19, 1997, El Cerrito Police Officer Michael Felmann was dispatched to the Eagles Hall located on the corner of Carlson Boulevard and Central Avenue in El Cerrito, which is in Contra Costa County. A large party being held at the hall was ending, and hall security had requested "police presence" to prevent any problems. Officer Felmann parked his patrol vehicle in the Union 76 gas station across the intersection from the hall. Another El Cerrito police officer, Jeff Doty, also answered the dispatch, and arrived in a separate vehicle. When the party broke up, more than 100 persons left the hall and began to congregate in the parking lot of the hall and in the parking lot of the Nation's Hamburgers outlet located on the corner of San Pablo and Central Avenues.

Officer Felmann had been watching the situation for approximately 20 minutes when he noticed a light-colored Suburban stopped in front of Nation's Hamburgers. He believed some sort of disturbance was going on and heard people speaking loudly. Officer Felmann then heard three or four gunshots, and saw an African-American man shooting a handgun into the crowd outside Nation's. The shooter was approximately 18 to 20 years of age, and was "sitting on the window sill" of the Suburban and holding onto the roof of the vehicle while firing. As these first shots were fired, the

Suburban began accelerating rapidly and made a left turn onto Central Avenue. As the Suburban turned, the shooter fired three or four more shots at Officer Felmann and at another patrol car parked nearby. At trial, Officer Felmann identified the shooter as defendant's codefendant, Erick Jones.

After the shots were fired at him, Officer Felmann began to follow the Suburban, which proceeded down Central Avenue, toward Interstate 80 (I-80). Officer Doty followed behind Felmann's patrol vehicle. Officer Felmann activated his emergency lights, and the Suburban "slowly pulled to the right-hand curb lane" after a block or so. The Suburban stopped for a brief moment, then moved forward another 15 or 20 feet and stopped again. Officer Felmann brought his patrol vehicle to a stop and, using his public address system, ordered the occupants of the Suburban to exit from the vehicle one at a time. Officer Felmann could not determine how many persons were in the Suburban, because the rear window was tinted and no one complied with his command to exit from the vehicle. Officer Doty also stopped his vehicle, exited, and took cover behind the passenger door of Officer Felmann's vehicle. After 20 or 30 seconds, the Suburban sped off with its tires squealing. Officer Doty entered the passenger side of Officer Felmann's vehicle, and they resumed their pursuit of the Suburban.

The Suburban proceeded onto I-80 westbound, in moderate traffic, traveling in excess of 100 miles per hour and weaving in and out of lanes. Officer Felmann estimated that after a "[m]inute maybe," just before the Suburban reached the Ashby exit, which is in Berkeley in Alameda County, the rear window was rolled down. Officer Felmann dropped back to a distance of approximately 300 feet and, because he thought someone in the Suburban might be preparing to shoot at him, turned on his spotlight in an attempt to "blind" the person in the back of the vehicle. At that point, he could see "numerous people" in the Suburban, including one in the very back of the vehicle, and four or five in the passenger seats. About 30 seconds after the window was rolled down, Officer Felmann "very clearly" saw defendant lift up a floor jack and drop it out of the Suburban and into the path of his patrol vehicle. Although he was traveling at a speed in excess of 100 miles per hour, Officer Felmann was able to take evasive action to avoid being hit by the jack.

The window rolled up, the chase continued, and the Suburban proceeded onto Interstate 580 (I-580) heading eastbound "toward Oakland/Hayward." Just before the Suburban reached the Grand Avenue exit, the window of the Suburban again rolled down, and Officer Felmann saw defendant take a large tire and balance it in the open rear window of the Suburban for 15 to 20 seconds. The officer veered to the left, but was forced back behind the

Suburban by other traffic. As soon as the officer pulled in behind the Suburban again, defendant released the tire. Officer Felmann still was travelling at speeds in excess of 100 miles per hour. The tire bounced, but Officer Felmann was able to avoid it by driving "to the right shoulder." At the Park Boulevard exit, the Suburban left I-580 and the chase continued on city streets in Oakland. The Suburban eventually crashed, and Officer Felmann saw several young African-American men run away, including one with braids whom he identified as defendant.[1] One of the occupants was found hiding under a tarp near the crash scene. None of the other occupants of the vehicle were apprehended that night. However, a pair of pants found in the "far back" of the Suburban contained a check payable to defendant.[2]

A jack and a tire were recovered from, respectively, I-80 and I-580. A woman who lived two blocks from Nation's Hamburgers on Central Avenue in El Cerrito found a handgun on the walkway in front of her house the morning after the incident. The gun, a .38 special Colt Trooper, contained six expended shell casings.

## B. *Defendant's Motion for Acquittal.*

Initially, the information alleged that the offenses involving defendant— counts five and six—were committed in Alameda County.[3] On the second day of the three-day trial, the prosecution moved to amend the information

---

[1]Officer Felmann testified that at least two of the five or six African-Americans he saw emerge from the vehicle had braids in their hair, and agreed that the braids defendant wore at trial were different from those worn by the assailant whom the officer had observed in the back of the Suburban.

[2]Officer Felmann testified at the preliminary hearing that he had seen a check cashing card with a photograph of defendant in a wallet found by Officer Doty in the Suburban on the night of the incident. Officer Doty was unavailable to lay a foundation for the admission of this item at trial, however. Accordingly, the trial court ruled the card to be inadmissible.

[3]Although the record before the Court of Appeal did not contain a copy of the complaint that was filed in municipal court and upon which the preliminary hearing was held, we have obtained a copy of the second amended complaint that was filed on January 24, 1997, in Contra Costa County Municipal Court. After having given appropriate notice to the parties, we take judicial notice of that document. (See Evid. Code, §§ 459, subd. (c), 455, subd. (a).) Count five of the complaint specifically alleges that "[o]n or about January 19, 1997, *at Alameda County*" (italics added) defendant Simon committed assault with a deadly weapon upon peace officers Doty and Felmann by means of a floor jack, and count six similarly alleges that on that same date "*at Alameda County*" (italics added) defendant committed assault with a deadly weapon upon these officers by means of a spare tire. There is no indication in the record that defendant filed a general or special demurrer to these counts of the complaint or took any other step, either before or at the preliminary hearing, to object to the prosecution of these offenses in Contra Costa County. Further, as the Court of Appeal opinion indicates, the information that was filed in Contra Costa County Superior Court after defendant was held to answer following the preliminary hearing, like the complaint,

to include the following jurisdictional clause: "It is further alleged, pursuant to Penal Code Section 781, that the offenses of Assault With A Deadly Weapon Against A Peace Officer, as alleged in Counts 5 and 6 of the Information, and the lesser offenses there involved, were committed in part in Contra Costa County and in part in Alameda County, and the acts and effects thereof and requisite to the consummation of the offenses occurred in Contra Costa County and Alameda County."

After the close of evidence, defendant moved under Penal Code section 1118.1 for a judgment of acquittal on the ground that Contra Costa County was an improper venue in which to prosecute him. After allowing the parties time to research the venue issue overnight, the trial court denied defendant's motion for acquittal and granted the prosecution's motion to amend the information.

C. *Defendant's Request for a Jury Instruction on the Issue of Venue.*

After thus disposing of the parties' motions, the court turned to the issue of jury instructions. Before proceeding, however, Defense Counsel Howard Jameson again raised the issue of venue, suggesting that his client should be allowed to enter a new plea to the amended information. The court confirmed that defendant was pleading not guilty to the amended information, and deemed the amendment filed. Mr. Jameson continued, arguing that the prosecution now was required to prove venue by a preponderance of the evidence, and that an instruction would have to be given to the jury allowing them to make the decision. The court asked defense counsel to wait, stating: "I'll hear from you with the proposed instruction at the appropriate time."

Toward the end of the jury instruction conference, defense counsel requested an instruction on the issue of venue as follows:

"The Court: All right. Now, with regard to an instruction with regard to this venue—

"Mr. Jameson: I have no instruction, and I don't find any in CALJIC that would cover the issue. So I have no instruction to submit.

"The Court: All right. You think venue is a jury question?

"Mr. Jameson: I believe it is. I believe that the District Attorney's burden is by a preponderance of the evidence, also.

---

specifically alleged that the offenses involving defendant were committed in Alameda County. [Footnote added by Supreme Court.]

"Mr. Butts: I'm, frankly, not sure whether it is. Seeing no jury instruction, I'm inclined to believe that it is not. And seeing how it's dealt with pretrial, and that's all I know about the issue.

"Mr. Jameson: It's a material allegation of the complaint in the information must be proven by the District Attorney.

"The Court: Okay. Any authority you wish to submit?

"Mr. Jameson: I don't have—no, I don't have any authority. No. I mean, I have it, but I don't have it in my head. I just know that's the rule of law that venue is an appropriate allegation in the complaint and in the Information, it must be proven by the District Attorney.

"The Court: All right. Noted." Upon completion of the jury instruction conference, the jury returned to hear closing arguments. No instruction on the issue of venue was given.

[End of passage from Court of Appeal opinion.]

As noted above, the jury returned a verdict finding defendant guilty of two counts of assault with a deadly weapon on a peace officer, and the trial court entered judgment on that verdict.

## II

In the Court of Appeal, defendant contended that the trial court committed two errors with regard to the question of venue, either of which assertedly compels reversal of his convictions. First, defendant, contending that the trial court erred in denying his motion for acquittal, maintained that the prosecution presented insufficient evidence at trial to support a finding of venue in Contra Costa County as to the offenses with which defendant was charged. Second, defendant argued that even if there was sufficient evidence at trial to support a finding that the offenses properly could be tried in Contra Costa County, the trial court nonetheless committed reversible error in failing to submit the question of venue to the jury for its determination.

The Court of Appeal rejected both contentions. In discussing the first claim, the Court of Appeal, relying upon a number of earlier appellate court decisions, initially stated that a claim of improper venue "is properly raised in the first instance either by demurrer (if the defect appears on the face of the accusatory pleading), or as a question of fact for the magistrate at the preliminary hearing. (See *People* v. *Tabucchi* [(1976)] 64 Cal.App.3d [133,]

141 [134 Cal.Rptr. 245]; *People* v. *Mitten* (1974) 37 Cal.App.3d 879, 881-882 [112 Cal.Rptr. 713]; and see 3 Erwin et al., Cal. Criminal Defense Practice (1998) § 61.03, p. 61-12.) If the defendant is held to answer at the preliminary hearing, the magistrate will be deemed to have concluded from the evidence presented that the county in which he or she sits is the proper venue for the prosecution, and the magistrate's express or implied finding of proper venue cannot be disturbed on appeal if there is at least some evidence to support the magistrate's decision. (*People* v. *Mitten, supra,* 37 Cal.App.3d at pp. 881-882, 885.)"

The Court of Appeal went on to examine the evidence presented at the preliminary hearing (which was similar to the evidence presented at trial) and concluded that the record of the preliminary hearing contained sufficient evidence to support a finding that venue for the two assault charges properly was in Contra Costa County under Penal Code section 781. That statute provides: "When a public offense is committed in part in one jurisdictional territory and in part in another, *or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more jurisdictional territories,* the jurisdiction of such offense is in any competent court within either jurisdictional territory." (Italics added.) In reaching this conclusion, the Court of Appeal relied upon numerous decisions holding that section 781 is to be construed liberally to vest venue in a court of a county where preliminary acts, leading to the commission of a crime in another county, occur. (See, e.g., *People* v. *Price* (1991) 1 Cal.4th 324, 385 [3 Cal.Rptr.2d 106, 821 P.2d 610]; *People* v. *Powell* (1967) 67 Cal.2d 32, 63 [59 Cal.Rptr. 817, 429 P.2d 137].) The Court of Appeal relied, in particular, upon *People* v. *Bismillah* (1989) 208 Cal.App.3d 80 [256 Cal.Rptr. 25], which concluded that a defendant who was stopped by the police in the City and County of San Francisco for a traffic violation and then fled in his vehicle across the Bay Bridge, ultimately colliding with a police car in Emeryville (in Alameda County), properly could be tried, under section 781, in San Francisco on the charge of aggravated assault on a police officer, even though the assault itself had occurred entirely in Alameda County.

Furthermore, in addition to determining that "where—as here—an implied finding of proper venue is supported by evidence at the preliminary hearing, it is not subject to further review on appeal," the Court of Appeal also concluded, apparently as an alternative ground for its rejection of defendant's initial venue claim, that "to the extent appellant had a colorable venue objection, it was apparent at the time of the preliminary hearing in February 1997, or, at the latest, when the information was filed in superior court in March of that year. *Having failed to make an appropriate objection at that time, appellant has waived his right to raise the issue on appeal.* [Citations.]" (Italics added.)

Although the Court of Appeal based its rejection of defendant's initial venue claim at least in part on its conclusion that defendant had waived the issue by failing to object to venue at either the preliminary hearing or upon the filing of the information, in its discussion of defendant's second venue claim—i.e., that the trial court had erred in failing to instruct the jury on the venue issue despite defendant's request for such an instruction at trial—the Court of Appeal did not rely upon defendant's failure to raise the venue issue prior to trial, but instead rejected that claim on the ground that the trial court justifiably had refused the request because the defense had failed to submit a jury instruction on the venue issue at the time the court and counsel conferred regarding proposed jury instructions, and had failed to direct the trial court to any authority supporting the defense's request for such an instruction.

In a lengthy footnote in the portion of its opinion discussing defendant's second venue claim, the Court of Appeal acknowledged that a 1940 decision of the Court of Appeal—*People v. Megladdery* (1940) 40 Cal.App.2d 748 [106 P.2d 84]—"expressly rejected the argument that venue or territorial jurisdiction is an issue for the court to decide in pretrial proceedings," but noted that "*Megladdery* conflicts with . . . more recent authority which appears to hold that questions about venue *should be* resolved at the time of the preliminary hearing, and the issue is ordinarily not subject to review on appeal unless there is no evidence to support a finding of proper venue. (*People* v. *Mitten, supra,* 37 Cal.App.3d at pp. 881, 885; see also *People* v. *Tabucchi, supra,* 64 Cal.App.3d at p. 141.)" The Court of Appeal then declared that "[t]o the extent there is conflict in the case law on the proper procedure for raising, preserving and reviewing claims of improper venue in felony prosecutions, we choose to follow the rule of *People v. Mitten, supra,* 37 Cal.App.3d 879, and *People* v. *Tabucchi, supra,* 64 Cal.App.3d 133, and would urge our Supreme Court to provide guidance on the issue if we are mistaken."

We granted review to clarify the proper procedure for raising a claim of improper venue in a felony proceeding.

### III

Traditionally, venue in a criminal proceeding has been set, as a general matter, in the county or judicial district in which the crime was committed. Under the provisions of Penal Code section 777,[4] that continues to be the

---

[4]All further statutory references are to the Penal Code unless otherwise indicated.

general rule in California. That statute provides in part: "[E]xcept as otherwise provided by law the jurisdiction of every public offense is in any competent court within the jurisdictional territory of which it is committed."[5]

Although under section 777 the county in which a felony was committed is, in the absence of another statute, the locale designated as the place for trial, in California numerous statutes—applicable to particular crimes or in specified circumstances—long have authorized the trial of a criminal proceeding in a county other than the county in which the offense itself occurred. Thus, for example, section 786 has provided, since the original enactment of the Penal Code in 1872, that when property taken by burglary, robbery, theft, or embezzlement in one county has been brought into another county, the trial of the initial burglary, robbery, theft, or embezzlement offense may be held in either county. Similarly, section 783 long has provided that when a criminal offense is committed on a railroad train, a boat, a common carrier, or in a motor vehicle in the course of "its voyage or trip," the offense may be tried in any county "through, on, or over which" the vehicle passed in the course of the trip or voyage, without regard to the specific location where the offense occurred. Section 781, the provision relied upon by the prosecution in the present case, represents another such example, providing that when a criminal offense is committed in part in one county and in part in another, or when "acts or effects thereof constituting or requisite to the consummation of the offense" occur in two or more counties, the offense may be tried in any of the counties in which such acts or effects occurred.[6]

---

[5]Section 777 provides in full: "Every person is liable to punishment by the laws of this State, for a public offense committed by him therein, except where it is by law cognizable exclusively in the courts of the United States; and except as otherwise provided by law the jurisdiction of every public offense is in any competent court within the jurisdictional territory of which it is committed."

Section 691, subdivision (b) defines the term "jurisdictional territory," when used with reference to a court, to mean "the city and county, county, city, township, or other limited territory over which the criminal jurisdiction of the court extends, as provided by law, *and in case of a superior court mean[s] the county in which the court sits.*" (Italics added.)

[6]Indeed, there currently are more than a dozen additional statutory provisions in California that authorize trial in a county other than the county in which all the elements of an offense occurred. (See, e.g., §§ 777a [parental failure to provide care may be tried in county in which minor is cared for or in county in which parent is apprehended], 777b [perjury committed outside of California may be tried in county in California "in which occurs the act, transaction, . . . or proceeding, in relation to which the [perjured statement] was given or made"], 778 [offense commenced outside California may be tried in county in California in which "the offense is consummated"], 782 [an offense committed on the boundary, or within 500 yards of the boundary, of two or more counties, may be tried in either county], 783.5 [an offense committed in a park situated in more than one county may be tried in any county in which any part of the park is situated], 784 [offense of kidnapping, false imprisonment, or seizure for slavery may be tried in the county in which the offense was committed, or the county out of

█ As past decisions recognize, venue provisions applicable to criminal proceedings serve a variety of purposes. First, "[v]enue in the place where the crime was committed promotes the convenience of both parties in obtaining evidence and securing the presence of witnesses." (*People v. Guzman* (1988) 45 Cal.3d 915, 934 [248 Cal.Rptr. 467, 755 P.2d 917].) Second, from the perspective of a defendant, statutory enactments that provide for trial in a county that bears a reasonable relationship to an alleged criminal offense also operate as a restriction on the discretion of the prosecution to file charges in any locale within the state that it chooses, an option that, if available, would provide the prosecution with the considerable power to choose a setting that, for whatever reason, the prosecution views as favorable to its position or hostile or burdensome to the defendant's. As one leading criminal treatise explains: "The principal justification today for the venue requirement of trial in the vicinity of the crime is to 'safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place.' " (1 Wharton's Criminal Procedure (13th ed. 1989) § 34, p. 183, quoting *United States v. Cores* (1958) 356 U.S. 405, 407 [78 S.Ct. 875, 877, 2 L.Ed.2d 873]; see, e.g., *United States v. Johnson* (1944) 323 U.S. 273, 275-278 [65 S.Ct. 249, 250-252, 89 L.Ed. 236].) Finally, venue provisions also serve to protect the interests of the community in which a crime or related activity occurs, "vindicat[ing] the community's right to sit in judgment on crimes committed within its territory." (*People v. Guzman, supra*, 45 Cal.3d at p. 937.)

█ In analyzing the procedural requirements governing venue, it is important to recognize at the outset that although the applicable California

---

which the person was taken, or a county "in which an act was done by defendant in instigating, procuring, promoting, or aiding in the commission of the offense"], 784.5 [offense of child abduction may be tried in (1) the county in which the child resides or where the agency deprived of custody is located, or (2) the county in which the child was taken, detained, or concealed, or (3) the county where the child is found], 784.7 [when defendant has committed multiple incidents of specified sexual offenses against the same victim in different counties, any such incident may be tried in any of the counties], 785 [offense of incest may be tried in county where offense is committed or in county where defendant is apprehended; offense of bigamy may be tried in the county in which marriage took place, a county in which cohabitation occurred, or the county in which defendant was apprehended], 788 [offense of treason, when the overt act is committed out of the state, may be tried in any county], 789 [offense of theft or receipt of stolen property, when the property has been stolen or received in another state and then brought into the state, is any county "into or through . . . which" the property has been brought], 790 [offense of murder or manslaughter may be tried in county where fatal injury was inflicted, or the county where the victim died, or the county in which his or her body was found], 795 [offense relating to an illegal prizefight may be tried in a county where any act was done toward commission of the offense, a county the offender passed through to commit the offense, or the county where the offender was arrested]; Bus. & Prof. Code, § 16754 [offense of illegal restraint of trade may be tried in any county in which the offense was committed in whole or in part, or a county where any of the offenders reside, or a county where any corporate defendant does business].)

statutes generally employ the terms "jurisdiction" and "jurisdictional terri-tory" in designating the proper venue for the trial of a criminal proceeding (see, e.g., § 777, quoted at fn. 5, *ante*), the issue of venue in criminal as well as in civil cases does *not* involve a question of "fundamental" or "subject matter" jurisdiction over a proceeding. As a leading treatise explains: "If the crime is one over which California can and does exercise its legislative jurisdiction because it was committed in whole or in part within the state's territorial borders, California courts have jurisdiction to try the defendant. [Citation.] Moreover, if the charge is brought in a competent court (i.e., superior court for felonies, municipal court for misdemeanors), *that court, no matter where located in the state*, may have subject matter jurisdiction of the offense. [Citation.] [¶] Thus, *venue is not jurisdictional in the fundamental sense*; and, both in civil and criminal cases, a change of venue from the superior court of one county to the same court in another county does not affect its jurisdiction over the subject matter of the cause." (4 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Jurisdiction and Venue, § 45, p. 135, italics added (Witkin & Epstein); see also 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 701, pp. 892-893.)

Although this point is a basic one, use of the term "jurisdiction" at times has created confusion in the venue context (as it has in other contexts[7]) and may be at least in part responsible for the inconsistency that the Court of Appeal noted between earlier and more recent California appellate decisions that have considered questions regarding the procedural requirements for raising an objection to venue in a criminal proceeding. (See, e.g., *People v. Megladdery, supra*, 40 Cal.App.2d 748, 762.) Nonetheless, even if there once may have been some doubt as to this matter, it is now established beyond question that the issue of venue does *not* involve a matter of subject matter jurisdiction. If only the court or courts designated by the relevant venue statute possessed subject matter jurisdiction over the proceeding, "no change of venue from the locality could be valid, for subject matter juris-diction cannot be conferred on a court . . . ." (4 Witkin & Epstein, *supra*,

[7]The term "jurisdiction" is notoriously subject to confusion. As this court observed in *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 287 [109 P.2d 942, 132 A.L.R. 715]: "The term, used continuously in a variety of situations, has so many different meanings that no single statement can be entirely satisfactory as a definition." The court in *Abelleira* further noted: "The concept of jurisdiction embraces a large number of ideas of similar character, some fundamental to any judicial system, some derived from the requirements of due process, some determined by the constitutional or statutory structure of a particular court, and some based upon mere procedural rules originally devised for convenience and effi-ciency, and by precedent made mandatory and jurisdictional. . . . [A]s a practical matter, accuracy in definition is neither common nor necessary. Though confusion and uncertainty in statement are frequent, there is surprising uniformity in the application of the doctrine by the courts, so that sound principles may be deduced from the established law by marshalling the cases and their holding in this field." (*Id.* at p. 291.)

Jurisdiction and Venue, § 45, p. 136.) ██ ██ Because it is beyond dispute that a change of venue may be ordered in a criminal case under appropriate circumstances, and also beyond dispute that any superior court to which a felony proceeding has been transferred has subject matter jurisdiction over the proceeding,[8] all modern decisions recognize that criminal venue statutes do not involve a court's jurisdiction in the fundamental sense of subject matter jurisdiction.

██ It is equally well established that a defendant's right to be tried in the venue authorized by statute is a right that is subject to waiver by the defendant. As noted above, in the absence of another applicable statute the venue of a felony proceeding in California is set by statute in the county in which the alleged offense occurred. (§ 777.) In many instances, however, a defendant, rather than insisting upon the right to be tried in that locale, will move for a change of venue, viewing trial in the location in which the crime occurred, by a jury drawn from that locale, as unduly prejudicial. (§ 1033.) If a defendant's motion for change of venue is granted, and the proceeding is transferred to a county other than the county designated by the applicable venue statute, the court to which the proceeding has been transferred clearly has authority over the matter and the defendant has waived any right to object to the venue of the trial.

 ██ ██ Although it is clear that a defendant waives his or her right to object to the venue of a criminal trial when the defendant affirmatively moves for a change of venue, the question presented by this case is whether a defendant properly should be held to have forfeited his or her right to object to such venue by failing specifically to raise such an objection in a timely fashion.[9]

The United States Supreme Court never has directly addressed the issue under federal law, but the lower federal courts generally agree that a

---

[8]In California, a superior court has subject matter jurisdiction with regard to any felony offense committed within the state, no matter where the offense was committed. (See, e.g., *People v. Sering* (1991) 232 Cal.App.3d 677, 685 [283 Cal.Rptr. 507]; *People v. Remington* (1990) 217 Cal.App.3d 423, 428-429 [266 Cal.Rptr. 183].)

[9]In this context, as in others, the terms "waiver" and "forfeiture" long have been used interchangeably. As the United States Supreme Court has explained, however, "[w]aiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' [Citations.]" (*United States v. Olano* (1993) 507 U.S. 725, 733 [113 S.Ct. 1770, 1777, 123 L.Ed.2d 508].) Thus, it is most accurate to characterize the issue as whether a defendant forfeits the right to object to venue by failing to timely raise such an objection prior to trial. Accordingly, even though past decisions in this area regularly use both terms, in our subsequent discussion we generally shall refer to the issue as one of forfeiture. (See also *People v. Williams* (1999) 21 Cal.4th 335, 340, fn.1 [87 Cal.Rptr.2d 412, 981 P.2d 42]; *Cowan v. Superior Court* (1996) 14 Cal.4th 367, 371 [58 Cal.Rptr.2d 458, 926 P.2d 438]; *People v. Saunders* (1993) 5 Cal.4th 580, 590, fn. 6 [20 Cal.Rptr.2d 638, 853 P.2d 1093].)

forfeiture of the right to object to the venue of a criminal trial may result from the inaction of the defendant. The case of *Hagner v. United States* (D.C. Cir. 1931) 54 F.2d 446 contains what frequently is cited as the seminal discussion of the issue. In *Hagner*, the defendants were charged with using the federal mail for fraudulent purposes, based upon the mailing of a letter from Pennsylvania to Washington, D.C. Under the wording of the federal mail fraud statute as it read at the time of the offense, venue properly was only in the place where the letter was mailed (i.e., Pennsylvania), but the prosecution in *Hagner* was brought and tried in the District of Columbia. The defendants in *Hagner* did not object to venue prior to trial, but on appeal they contended that their convictions should be reversed because the evidence at trial failed to establish venue in the District of Columbia court. The federal circuit court in *Hagner* rejected this contention, explaining: "In the case now under consideration . . . the defendant[s] . . . appeared, and upon their arraignment pleaded not guilty. They were represented by counsel. They might have pleaded to the jurisdiction. They did not. They elected to go to trial, on an indictment duly charging a violation of a law of the United States, in a court having general jurisdiction of the class of offenses charged. This, we think, was as complete an agreement to waive their constitutional privilege to refuse to be tried in the District of Columbia as though it were in express words." (54 F.2d at p. 449.) Subsequent federal cases confirm that "[d]efects relating to venue are waived unless asserted prior to trial" (*United States v. Dryden* (5th Cir. 1970) 423 F.2d 1175, 1178; see, e.g., *Harper v. United States* (5th Cir. 1967) 383 F.2d 795), particularly when the defect with regard to venue is apparent on the face of the accusatory pleading. (See, e.g., *United States v. Jones* (2d Cir. 1947) 162 F.2d 72, 73; *United States v. Price* (2d Cir. 1971) 447 F.2d 23, 27.)

A significant number of our sister states also follow the rule that objections to the place of trial in a criminal proceeding are forfeited by a defendant unless raised before trial, although in many states this forfeiture rule has been established by a specific statute or court rule rather than by judicial decision. (See, e.g., 720 Ill. Comp. Stat. Ann. § 5/1-6(a) [cited in *People v. Gallegos* (1997) 293 Ill.App.3d 873 [228 Ill.Dec. 351, 689 N.E.2d 223, 226]; Iowa Code § 803.2 [cited in *State v. Allen* (Iowa 1980) 293 N.W.2d 16, 18]; La. Code Crim. Proc. Ann., art. 615 [cited in *State v. Gatch* (La.Ct.App. 1996) 669 So.2d 676, 681]; Md. Rules Proc., rule 4-252 [cited in *Spencer v. State* (1988) 76 Md.App. 71 [543 A.2d 851, 856-857]; Minn. Rules Crim. Proc., rule 10.01 [cited in *State v. Blooflat* (Minn.Ct.App. 1994) 524 N.W.2d 482, 483-484]; Utah Code Ann. § 76-1-202 [cited in *State v. Cauble* (Utah 1977) 563 P.2d 775, 777].) In *State v. McCorkell* (1992) 123 Wash.2d 467 [822 P.2d 795], the appellate court reached this conclusion in the absence of a specific statutory provision, explaining: "Proper venue is

not an element of a crime [citation], and is not a matter of jurisdiction. [Citation.] Rather, proper venue is a constitutional right which is waived if a challenge is not timely made. [Citations.] . . . [¶] . . . [¶] . . . While prior cases make it clear that a defendant's constitutional right to proper venue is waived if not timely asserted, none has defined the boundaries of timeliness. We hold that a criminal defendant waives any challenge to venue by failing to present it by the time jeopardy attaches." (*Id.* at pp. 796-797, fn. omitted; see also *State v. Dent* (1994) 123 Wash.2d 467 [869 P.2d 392, 399-400].)[10] On the other hand, there are a number of recent out-of-state decisions that hold that a defendant does not forfeit an objection to venue by failing specifically to raise the objection prior to trial. (See, e.g., *Navarre v. State* (Fla.Dist.Ct.App. 1992) 608 So.2d 525, 526; *Jones v. State* (2000) 272 Ga. 900 [537 S.E.2d 80, 83]; *State v. Miyashiro* (1982) 3 Hawaii App. 229 [647 P.2d 302, 304]; *State v. True* (Me. 1975) 330 A.2d 787, 789; *People v. Greenberg* (1997) 89 N.Y.2d 553 [656 N.Y.S.2d 192, 193-194, 678 N.E.2d 878, 879-880].)

As noted by the opinion of the Court of Appeal in the present case, past California decisions do not provide consistent guidance on this question.

On the one hand, a series of very early California Supreme Court decisions held that, because "[t]he plea of not guilty puts in issue all the material averments of the indictment, including that of the *locus delicti*" (*People v. Bevans* (1877) 52 Cal. 470, 470-471), and because the prosecution bears the burden of proof on the question of venue, a judgment of conviction is subject to reversal on appeal (and to remand for a new trial) when the evidence at trial does not affirmatively establish that the trial was conducted in a statutorily authorized venue. (See, e.g., *People v. Parks* (1872) 44 Cal. 105; *People v. Roach* (1874) 48 Cal. 382; *People v. Fisher* (1876) 51 Cal. 319, 321-322; *People v. Bevans, supra,* 52 Cal. 470, 471; *People v. Aleck* (1882) 61 Cal. 137, 137-138.)[11] Although none of these early decisions discussed the question of waiver or forfeiture—or, indeed, even recognized

---

[10]In describing venue as a "constitutional right," the court in *State v. McCorkle, supra,* 822 P.2d 795, 796, was referring to a provision of the Washington Constitution, which embodies a right pertaining to venue. (See Wash. Const., art. I, § 22.) The California Constitution does not contain a criminal venue provision, and in California the proper venue for criminal trials is governed by statute. (See, e.g., *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1054-1056 [108 Cal.Rptr.2d 409, __ P.3d __].)

[11]Early cases frequently use the phrase "*locus delicti*"—the place or location of the crime—to refer to the issue of venue. As we already have noted, although under section 777 venue generally is set in the county in which the crime occurred, there are numerous statutes that authorize trial in a county other than the county in which the crime occurred. (See, *ante,* pp. 1094-1095, fn. 6.) In such circumstances, a determination of the location of the crime does not necessarily resolve the venue question, and thus it is potentially misleading to equate the phrase "*locus delicti*" with the issue of venue.

that a defendant could waive or forfeit the right to be tried in a statutorily designated venue—all of them apparently proceeded from the assumption that a defendant adequately preserves the right to object to venue simply by entering a plea of not guilty, at least when the defect in venue is not apparent on the face of the accusatory pleading. Indeed, one early decision—*People v. More* (1886) 68 Cal. 500 [9 P. 461]—went so far as to hold that when an accusatory pleading adequately alleged that the crime in question was committed in the county in which the charge was brought, the superior court lacked authority in ruling on a motion under section 995 even to consider the issue of venue or to set aside an information on the ground that the evidence before the magistrate did not establish venue in the county where the proceeding had been filed.[12]

On the other hand, later California Court of Appeal decisions have recognized a defendant's general ability to challenge venue at a pretrial stage—not only when the accusatory pleading itself allegedly reveals a defect in venue (see, e.g., *People v. Goscinsky* (1921) 52 Cal.App. 62, 64 [198 P. 40]), but also when the evidence at the preliminary hearing or before the grand jury fails to support venue in the court in which the proceeding is to be tried. (See, e.g., *Bogart v. Superior Court* (1964) 230 Cal.App.2d 874, 875-876 [41 Cal.Rptr. 480]; *In re Huber* (1930) 103 Cal.App. 315, 316-317 [284 P. 509].) In contrast to the decision in *People v. More, supra*, 68 Cal. 500, 504, which suggested that the issue of venue generally is not appropriate for determination prior to trial, more recent appellate decisions strongly have voiced a directly contrary view, declaring that "[p]retrial resolution of venue questions is, in our opinion, eminently superior to disposition of the matter by jury verdict," and explaining that "[b]ecause . . . venue is a waivable right, it is most appropriate that it be met, or waived, at the outset of proceedings." (*People v. Sering, supra*, 232 Cal.App.3d 677, 684, fn. 3.) In addition, the more recent Court of Appeal decisions explicitly have recognized that the question of venue constitutes "a nonfundamental aspect of jurisdiction *which may be waived either by defendant's consent or failure to object*." (*People v. Gbadebo-Soda* (1995) 38 Cal.App.4th 160, 170 [45 Cal.Rptr.2d 40], italics added; *People v. Campbell* (1991) 230 Cal.App.3d 1432, 1443 [281 Cal.Rptr. 870].) Thus, unlike the earlier line of decisions,

---

[12]The court in *More* stated in this regard: "If it had appeared on the face of the information (which it did not) that the offense charged was committed out of the jurisdiction of the court, the proper mode to take advantage of such objection would have been by demurrer. (Pen. Code, sec. 1004.) But in a case like the one we are now considering, where the information is good on its face, defendant should have availed himself of the objection to the jurisdiction under the plea of not guilty; and in that event it would have been a question for the jury to determine. (Pen. Code, sec. 1012.) [¶] We do not think the Superior Court on a motion to set aside the information had any right to determine the question." (*People v. More, supra*, 68 Cal. at p. 504.)

the Court of Appeal decisions that have addressed venue claims within the past decade have found, under a variety of circumstances, that a defendant has waived the right to raise on appeal an objection to venue by failing to take timely steps in the trial court specifically to raise or preserve the venue question. (See, e.g., *People v. Sering, supra,* 232 Cal.App.3d 677, 685-687 [defendant waived issue of venue by failing to request instructions on venue at trial]; *People v. Remington, supra,* 217 Cal.App.3d 423, 429-431 [defendant, who raised an objection to venue at the preliminary hearing, waived the right to object to venue on appeal by failing at trial to renew the objection to venue]; *People v. Anderson* (1991) 1 Cal.App.4th 1084, 1088-1089 [3 Cal.Rptr.2d 247] [defendant waived any venue objection by failing to raise the issue at trial]; *People v. Tabucchi, supra,* 64 Cal.App.3d 133, 141 [defendant waived venue objection by pleading guilty].) The holdings in *Sering, Remington,* and *Anderson* are clearly inconsistent with the early decisions indicating that a defendant's entry of a plea of not guilty is itself sufficient to preserve for appeal the issue of venue.

In view of the conflict between the line of very early California Supreme Court decisions and the line of much more recent California Court of Appeal decisions, it is evident that a reexamination of the appropriate procedure for challenging venue in a felony proceeding is in order.

In undertaking this reexamination, we begin with a consideration of the current California statutory provisions that relate to the issue of venue. As we shall see, although there is no current California statute that prescribes the procedure for challenging venue in a criminal *felony* proceeding, related legislative provisions shed considerable light on the general procedural doctrine that bears on the question before us.

Perhaps the most closely related statutory provision is section 1462.2, which sets forth the procedure for challenging venue in a *misdemeanor* proceeding. Section 1462.2 initially provides that the proper court for the trial of a misdemeanor offense is "[a]ny municipal court . . . established in the county within which the offense charged was committed, or the superior court in a county in which there is no municipal court . . . ." The section then goes on to provide that "[i]f an action or proceeding is commenced in a court having jurisdiction of the subject matter thereof other than the court herein designated as the proper court for the trial, the action may, notwithstanding, be tried in the court where commenced, *unless the defendant, at the time of pleading, requests an order transferring the action or proceeding to the proper court. . . .* The judge must, at the time of arraignment, inform the defendant of the right to be tried in the county wherein the offense was

committed." (Italics added.)[13] ■ Thus, under section 1462.2, a defendant in a misdemeanor proceeding forfeits the right to object to venue unless he or she raises the objection at the time a plea to the charge is entered.

In addition to the statutory provision relating to venue in misdemeanor proceedings, the statutory provisions relating to venue *in civil actions* also provide that when a defendant believes that an action has been filed in an improper or unauthorized venue and wishes to object to trial of the proceeding in that venue, the defendant must object specifically and promptly or the objection will be forfeited. In civil actions, an objection that a proceeding has been brought in the wrong venue is raised by filing a motion to change venue, specifying that the court designated in the complaint is not the proper venue for trial. (Code Civ. Proc., § 397, subd. (a).) Code of Civil Procedure section 396b, subdivision (a) provides that even when a civil action or proceeding is commenced in an improper venue, the action nonetheless may be tried in the court where commenced "unless the defendant, *at the time he or she answers, demurs, or moves to strike, or . . . within the time otherwise allowed to respond to the complaint,*" files a notice of motion for an order transferring the action to the proper court.[14] ■ Thus, as with misdemeanors, any objection that a civil action has been brought in the wrong venue must be raised by a defendant specifically and at the very outset of the proceeding or it will be considered to have been forfeited.

---

[13]Section 1462.2 provides in full: "Except as otherwise provided in the Vehicle Code, the proper court for the trial of criminal cases amounting to misdemeanor shall be determined as follows: Any municipal court, having jurisdiction of the subject matter of the case, established in the county within which the offense charged was committed, or the superior court in a county in which there is no municipal court, is the proper court for the trial of the case.

"If an action or proceeding is commenced in a court having jurisdiction of the subject matter thereof other than the court herein designated as the proper court for the trial, the action may, notwithstanding, be tried in the court where commenced, unless the defendant, at the time of pleading, requests an order transferring the action or proceeding to the proper court. If after such request it appears that the action or proceeding was not commenced in the proper court, the court shall order the action or proceeding transferred to the proper court. The judge must, at the time of arraignment, inform the defendant of the right to be tried in the county wherein the offense was committed."

[14]Code of Civil Procedure, section 396b, subdivision (a), provides in full: "Except as otherwise provided in Section 396a, if an action or proceeding is commenced in a court having jurisdiction of the subject matter thereof, other than the court designated as the proper court for the trial thereof, under this title, the action may, notwithstanding, be tried in the court where commenced, unless the defendant, at the time he or she answers, demurs, or moves to strike, or, at his or her option, without answering, demurring, or moving to strike and within the time otherwise allowed to respond to the complaint, files with the clerk, a notice of motion for an order transferring the action or proceeding to the proper court, together with proof of service, upon the adverse party, of a copy of those papers. Upon the hearing of the motion the court shall, if it appears that the action or proceeding was not commenced in the proper court, order the action or proceeding transferred to the proper court."

█ Although the foregoing statutes do not apply to criminal felony proceedings, they demonstrate that, as a general matter, the familiar legal doctrine providing that a right may be forfeited by a party's failure to assert the right in a timely fashion is applicable to the right to be tried in a statutorily designated venue.

Over the past decade, this court has had occasion in a number of decisions to discuss the basic rationale of the forfeiture doctrine. █ As we explained in *People v. Saunders, supra,* 5 Cal.4th 580, 590: " ' "The purpose of the general doctrine of waiver is to encourage a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had . . . ." ' [Citation.] ' "No procedural principle is more familiar to this Court than that a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." . . .' [Citation.] [¶] 'The rationale for this rule was aptly explained in *Sommer* v. *Martin* (1921) 55 Cal.App. 603 at page 610 [204 P. 33] . . . : " ' In the hurry of the trial many things may be, and are, overlooked which would readily have been rectified had attention been called to them. The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them. If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal.' " ' [Citation.]" (Fn. omitted; see, e.g., *People v. Scott* (1994) 9 Cal.4th 331, 353-356 [36 Cal.Rptr.2d 627, 885 P.2d 1040]; *People v. Welch* (1993) 5 Cal.4th 228, 235 [19 Cal.Rptr.2d 520, 851 P.2d 802]; *People v. Walker* (1991) 54 Cal.3d 1013, 1023 [1 Cal.Rptr.2d 902, 819 P.2d 861].)

█ In light of the nature and fundamental purpose of the venue safeguard, we conclude that under the general forfeiture doctrine, a defendant in a felony proceeding who fails timely to assert an objection to the venue in which the proceeding has been brought and is to be tried should be found to have forfeited any right to object to trial in that venue. As discussed above, the question of venue does not involve a matter of a court's fundamental authority or subject matter jurisdiction over a proceeding. Instead, the right to be tried in a statutorily designated venue is intended, from the perspective of an accused, as a safeguard against being required to stand trial in an unrelated and potentially burdensome distant location. This protection can be meaningfully afforded to a defendant only if he or she objects to venue *before* being required to proceed to trial in the allegedly improper locale. If a defendant's timely challenge to venue is sustained, the trial can be conducted in the proper location, before the parties, the witnesses, and the

court have incurred the burden and expense of a trial in an unauthorized venue.

Furthermore, because even when a criminal charge is filed in a county other than a statutorily authorized venue, a defendant may not view the location in which the charge has been filed as unduly burdensome or undesirable, but on the contrary may prefer for strategic reasons to be tried in that venue rather than in a statutorily designated locale, there is a compelling basis for not permitting a defendant who has remained silent and has allowed the proceeding to go forward in the initial location, thereafter to raise a claim of improper venue during trial or on appeal. As the United States Supreme Court pointed out in a somewhat related context, in the event a defendant were not required to raise such a claim in a timely fashion prior to trial, "[s]trong tactical considerations would militate in favor of delaying the raising of the claim in the hopes of an acquittal, with the thought that if those hopes did not materialize, the claim could be used to upset an otherwise valid conviction at a time when reprosecution might well be difficult." (*Davis v. United States* (1973) 411 U.S. 233, 241 [93 S.Ct. 1577, 1582, 36 L.Ed.2d 216] [discussing importance of requiring that any objection to the composition of the grand jury that returned the indictment be made by a timely pretrial motion].)

Accordingly, taking into account the nature and purpose of the venue safeguard and the substantial state interest in protecting the integrity of the process from improper "sandbagging" by a defendant, we conclude that a defendant who fails to raise a timely objection to venue in a felony proceeding forfeits the right to object to venue—either at trial or on appeal. (Accord, *People v. Jones* (1973) 9 Cal.3d 546, 556, fn. 7 [108 Cal.Rptr. 345, 510 P.2d 705] [claim that jury panel is not representative of community is waived if not timely asserted]; *People v. Laster* (1971) 18 Cal.App.3d 381, 387 [96 Cal.Rptr. 108] [claim that venue should have been changed in light of prejudicial pretrial publicity is forfeited if not timely asserted]; *People v. Wilson* (1963) 60 Cal.2d 139, 146-148 [32 Cal.Rptr. 44, 383 P.2d 452] [constitutional and statutory right to speedy trial deemed waived if not asserted in timely fashion].)[15]

Moreover, contrary to the position reflected in many of the early California venue cases discussed above, in our view a defendant cannot be found to

---

[15]Because a defendant's failure to raise a timely objection to venue often will reflect a strategic decision on the part of the defense, and because the commencement of a proceeding in an improper venue is a defect that easily can be remedied if timely raised, the issue before us is readily distinguishable from a defendant's failure timely to raise a claim that the statute of limitations on a charged criminal offense has run. Consequently, our decision in *People v. Williams, supra,* 21 Cal.4th 335, reaffirming the long-standing rule that a criminal defendant's failure to raise a statute of limitations claim prior to or at trial does not constitute a forfeiture of such a claim, is consistent with our determination in the present case that the general

have timely and adequately objected to venue simply by entering a not guilty plea to a felony charge. ■ It is true, as defendant maintains, that under section 1019 a not guilty plea generally puts in issue every material allegation of the accusatory pleading—including any allegation in the accusatory pleading regarding the alleged location of the charged offense—and thus a not guilty plea clearly does not constitute a concession by the defendant that the proceeding has been filed in an appropriate venue and does not relieve the prosecution of its burden of establishing venue when a claim of improper venue is timely raised.[16]

■ For a number of reasons, however, we conclude that the entry of a not guilty plea cannot in itself reasonably be regarded as constituting an objection to venue. To begin with, although a not guilty plea represents a general denial by the defendant of his or her guilt of the charged offense, such a plea does not necessarily signify that the defendant challenges *the location* where the offense is alleged to have occurred, and, absent a more specific indication, such a plea ordinarily would not be understood as addressed to that subsidiary or ancillary point. Thus, from a realistic perspective, the entry of a not guilty plea cannot reasonably be viewed as putting either the court or the prosecution on notice that the defendant contests the alleged location of the crime. Second, to the extent a not guilty plea constitutes a denial of any allegation in an accusatory pleading regarding the location of an offense or any other allegation relevant to venue, this

---

forfeiture doctrine is applicable to a claim of improper venue. (Cf. *People v. Stanfill* (1999) 76 Cal.App.4th 1137, 1150 [90 Cal.Rptr.2d 885] [holding that, because of the substantial risk of gamesmanship, "a defendant forfeits the right to complain on appeal of conviction of a time-barred lesser included offense where the charged offense was not time-barred and the defendant either requested or acquiesced in the giving of instructions on the lesser offense"].)

[16]Section 1019 provides in full: "The plea of not guilty puts in issue every material allegation of the accusatory pleading, except those allegations regarding previous convictions of the defendant to which an answer is required by Section 1025."

In their brief before this court, the People question whether an allegation regarding venue constitutes a "material allegation" of an accusatory pleading within the meaning of section 1019, noting that section 950 states only that "[t]he accusatory pleading must contain: [¶] 1. The title of the action, specifying the name of the court to which the same is presented, and the name of the parties; [¶] 2. A statement of the public offense or offenses charged therein." In response, however, defendant points out that section 959 additionally provides that "[t]he accusatory pleading is sufficient if it can be understood therefrom: [¶] . . . [¶] 5. That the offense charged is triable in the court in which it is filed, except in case of a complaint filed with a magistrate for purposes of a preliminary examination," and cites numerous cases indicating that the accusatory pleading generally is required to allege that venue is proper. (See, e.g., *People v. Wong Wang* (1891) 92 Cal. 277, 281 [28 P. 270].) Because when a defendant objects to venue, the People clearly have the obligation to establish (by a preponderance of the evidence) that venue is proper (see generally 4 Witkin & Epstein, *supra*, Jurisdiction and Venue, § 48, pp. 137-138, and cases cited), any allegation regarding venue contained in an accusatory pleading is a material allegation within the meaning of section 1019. Nonetheless, as explained hereafter, this does not mean that the entry of a not guilty plea is sufficient in itself to constitute a specific objection to venue.

does not mean that the entry of the not guilty plea is the equivalent of the defendant's registering an objection to the proposed site of the trial. As explained above, even when a defendant is of the view that the criminal proceeding has not been filed in an authorized venue, he or she nonetheless may prefer for strategic purposes to be tried in the location where the proceeding has been filed rather than in a statutorily designated venue. Thus, the entry of a not guilty plea in itself simply does not indicate that the defendant objects to being tried in the location where the proceeding has been filed.

Under these circumstances, we conclude that a defendant's entry of a not guilty plea cannot reasonably be treated as a timely assertion of an objection to venue. Indeed, the misdemeanor venue statute described above—which, as noted, provides that any objection to venue is forfeited "unless the defendant, at the time of pleading, requests an order transferring the action or proceeding to the proper court" (§ 1462.2)—is inconsistent with an assumption that, as a general matter, a simple plea of not guilty in a criminal case is sufficient in itself to raise and preserve an objection to venue. Because an objection to venue, if sustained, does not signify that the defendant will avoid a trial on the charges altogether, but instead means only that he or she will face trial in another location, a defendant who objects to standing trial in the original locale must bring a specific objection to venue to the attention of the court in a timely fashion. Accordingly, we conclude that insofar as past California decisions hold that the entry of a not guilty plea is sufficient to constitute a timely objection to venue (see *People v. Parks, supra,* 44 Cal. 105; *People v. Bevans, supra,* 52 Cal. 470, 471; *People v. Aleck, supra,* 61 Cal. 137, 137-138; *People v. More, supra,* 68 Cal. 500, 508), these decisions are in error and are overruled.

Having concluded (1) that a defendant who fails to assert a timely objection to venue forfeits the right thereafter to object to venue, and (2) that a defendant's entry of a not guilty plea is insufficient to assert such an objection, we must determine at what point a defendant in a felony proceeding must object specifically to venue in order for the objection to be considered timely. Although, as we have seen, the current misdemeanor venue statute—section 1462.2—provides that an objection to venue must be raised when the defendant first enters a plea to the charge, in the absence of an analogous statutory provision explicitly applicable to felony proceedings we do not believe that it would be appropriate to extend to the felony context such a stringent timeliness rule. Recent Court of Appeal decisions have indicated that in felony proceedings a claim of improper venue properly may be raised by demurrer (if the defect in venue appears on the face of the accusatory pleading), by a challenge to venue specifically raised before the

magistrate at the preliminary hearing, or by a motion under section 995 challenging the validity of an indictment or information. (See, e.g., *People v. Remington, supra*, 217 Cal.App.3d 423, 429; *People v. Mitten, supra*, 37 Cal.App.3d 879, 881-882; *Bogart v. Superior Court, supra*, 230 Cal.App.2d 874, 875-876.) These cases have not suggested that an objection to venue in a felony proceeding is timely only if lodged at the time the defendant enters a plea.

Instead, we conclude that, in the absence of an explicit statutory provision establishing an earlier time by which a challenge to venue must be raised in a felony proceeding, a specific objection to venue by a defendant should be considered timely if made *prior to the commencement of trial.* Although in many instances it may be reasonable to expect a defendant to raise such an objection at an earlier point in time—particularly when the defendant is fully aware from the outset of the proceedings of the facts or evidence relevant to the venue issue—a number of considerations persuade us that the commencement of trial represents an appropriate standard of timeliness to adopt by judicial decision.

First, many of the decisions from other jurisdictions that have addressed the issue of timing have concluded that a defendant waives any challenge to venue if he or she fails to assert such an objection "prior to trial." (See, e.g., *United States v. Dryden, supra*, 423 F.2d 1175, 1178; *State v. McCorkell, supra*, 822 P.2d 795, 797 ["by the time jeopardy attaches"].) Second, the current California court rule governing the related matter of the time for filing a motion for *change of venue* in a criminal proceeding provides that "[e]xcept for good cause shown, the application [for change of venue] shall be filed *at least 10 days prior to the date set for trial . . . .*" (Cal. Rules of Court, rule 4.151, formerly rule 841 as amended and renumbered eff. Jan. 1, 2001, italics added.) Because under this rule a motion for change of venue is timely even if made shortly before trial, it appears reasonable, in the absence of a contrary legislative provision or court rule, also to treat an objection to venue as timely so long as the objection is asserted prior to the commencement of trial. On the other hand, given the respective interests of both the defendant and the state, we conclude that, in the absence of unusual circumstances, it is appropriate to consider untimely an objection to venue that is raised for the first time after the start of trial.[17]

In sum, under the general principles governing the forfeiture doctrine, and in light of the existing procedural rules in analogous areas, we conclude that

---

[17]It sometimes is suggested that when the accusatory pleading does not disclose on its face that the charge has been brought in an improper venue, it is unfair to require a defendant to raise an objection to venue prior to trial, because it is the prosecution that is aware of the evidence supporting the charges and revealing the location of the offense. In our view, however, this objection fails to take into account the circumstance that contemporary criminal procedural rules afford a defendant broad access prior to trial to the evidence underlying the

a defendant who wishes to object to venue in a felony proceeding must make a specific objection to venue prior to the commencement of trial. A defendant who fails to raise such an objection prior to trial ordinarily will be deemed to have forfeited such a claim. To the extent that prior decisions of this court or the Court of Appeal are inconsistent with this conclusion (see *People v. Parks, supra,* 44 Cal. 105; *People v. Roach, supra,* 48 Cal. 382; *People v. Fisher, supra,* 51 Cal. 319; *People v. Bevans, supra,* 52 Cal. 470, 471; *People v. Aleck, supra,* 61 Cal. 137; *People v. Meseros* (1911) 16 Cal.App. 277 [116 P. 679]; *People v. Pollock* (1938) 26 Cal.App.2d 602 [80 P.2d 106]; *People v. Megladdery, supra,* 40 Cal.App.2d 748), those decisions are overruled or disapproved.

## IV

Finally, defendant contends that even if this court determines that a defendant's failure to raise an objection to venue in a felony proceeding prior to trial constitutes a forfeiture of the right to challenge venue at trial or on appeal, it would be unfair to apply such a rule retroactively to this case. In support of this position, defendant emphasizes that at the time of his trial the line of early California Supreme Court decisions described above (see *ante,* pp. 1099-1100) had not been overruled, and that none of the more recent Court of Appeal decisions that have applied the forfeiture doctrine in the venue context specifically had held that a defendant is required to object to venue *prior to trial.*

In view of both of these circumstances, we agree with defendant that our holding in this case—that a defendant in a felony proceeding who wishes to object to venue must make a specific objection to venue prior to the commencement of trial—should be applied only prospectively. (See, e.g., *People v. Welch, supra,* 5 Cal.4th 228, 237-238.) Indeed, at oral argument, the Attorney General conceded the propriety of applying any such newly announced rule prospectively only. Accordingly, in this case, we shall not treat defendant as having forfeited his venue claims by failing specifically to object to venue prior to trial.

 As we shall explain, however, we nonetheless conclude that the Court of Appeal properly rejected defendant's venue claims. Defendant

---

prosecution's case, and a defendant ordinarily can be expected to recognize whether he or she is being required to stand trial in an improperly distant and unduly burdensome locale. Because in this case the accusatory pleadings, on their face, disclosed that the charged assaults occurred in Alameda County rather than in adjacent Contra Costa County where the charges were filed (see *ante,* p. 1089 & fn. 3), we have no occasion to decide whether unusual circumstances may exist in which the revelation of new evidence at trial would render a defendant's venue objection timely even though the objection was raised for the first time during trial.

initially maintains that the trial court erred in failing to direct a verdict in his favor on the issue of venue on the theory that the evidence at trial was insufficient to establish that Contra Costa County was a proper county for trial of the assault charges against him. This contention clearly lacks merit. As noted above, section 781 expressly provides that when a criminal offense is committed in part in one county and in part in another, *or* when "acts or effects thereof constituting or requisite to the consummation of the offense" occur in two or more counties, the offense may be tried in any county in which such acts or effects occurred. Numerous decisions establish that the provisions of section 781 must be given a liberal interpretation to permit trial in a county where only preparatory acts have occurred (see, e.g., *People v. Price, supra,* 1 Cal.4th 324, 385; *People v. Douglas* (1990) 50 Cal.3d 468, 493 [268 Cal.Rptr. 126, 788 P.2d 640]; *People v. Powell, supra,* 67 Cal.2d 32, 63), and in *People v. Bismillah, supra,* 208 Cal.App.3d 80, 85-87, the Court of Appeal correctly held, on facts very similar to those presented here, that when criminal conduct in one county results in a police pursuit and an assault on a pursuing officer in another county, under section 781 the assault charge may be tried in the county where the initial criminal conduct occurred. Thus, under the controlling cases, it is clear that the evidence supported venue in Contra Costa County.

Defendant further contends that even if the evidence was sufficient to support a finding of venue in Contra Costa County, the trial court erred in failing to instruct the jury on the question of venue. The Attorney General, in briefing before this court, suggests that the numerous California decisions holding that the issue of venue presents a question of fact to be determined by a jury are outmoded and should be reconsidered. We have no occasion to address that issue here because, even were we to assume that a defendant is entitled to have the question of venue submitted to the jury when the issue has been preserved and the defendant has timely tendered an adequate proposed instruction, in the present case defendant failed to tender such an instruction. As the summary of the trial court proceedings set out above discloses (*ante,* pp. 1089-1091), although the trial court afforded the parties a specific opportunity to research the venue issue, defense counsel failed to provide the court with a proposed jury instruction on venue at the pre-closing-argument jury instruction conference and, when questioned by the court at that conference, did not produce any specific authority supporting the giving of such an instruction. Of course neither the absence nor the presence of a pattern jury instruction on a given subject excuses a party from the ordinary obligation to submit proposed instructions to the trial court, as set forth in section 1093.5. (Cf. *People v. Alvarez* (1996) 14 Cal.4th 155, 217 [58 Cal.Rptr.2d 385, 926 P.2d 365]; *People v. Eckstrom* (1974) 43 Cal.App.3d 996, 1006 [118 Cal.Rptr. 391]; *People v. Roth* (1964) 228

Cal.App.2d 522, 527-528 [39 Cal.Rptr. 582].) Under these circumstances, the trial court did not err in denying defendant's request. (See, e.g., *People v. Ramos* (1997) 15 Cal.4th 1133, 1180-1181 [64 Cal.Rptr.2d 892, 938 P.2d 950] [citing § 1093.5]; *People v. Terry* (1969) 70 Cal.2d 410, 420, fn. 4 [77 Cal.Rptr. 460, 454 P.2d 36].)[18]

## V

For the reasons set forth above, the judgment of the Court of Appeal is affirmed.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.

---

[18]In support of his claim that the trial court erred in failing to instruct the jury on the venue issue or to submit that issue to the jury for its determination, defendant relies upon a number of cases that hold that venue presents a "question of fact" that properly should be decided by the jury. (See, e.g., *People v. More, supra*, 68 Cal. 500, 504; *People v. Megladdery, supra*, 40 Cal.App.2d 748, 762-764.) Although numerous California decisions contain similar language, the characterization of venue as presenting the type of factual question that properly is to be determined by a jury, rather than the type of procedural legal issue that is determined by the court, appears inconsistent with contemporary treatment of other, analogous procedural issues that do not relate to the guilt or innocence of the accused (such as whether the prosecution has complied with statutory and constitutional speedy trial requirements)—issues that uniformly are treated as legal questions to be decided by the court rather than a jury. (See, e.g., *People v. Sanders* (1990) 51 Cal.3d 471, 489-496 [273 Cal.Rptr. 537, 797 P.2d 561]; *People v. Wilson, supra*, 60 Cal.2d 139, 146-148; see generally *People v. McGee* (1977) 19 Cal.3d 948, 967-968 [140 Cal.Rptr. 657, 568 P.2d 382].) Indeed, treating venue as presenting a question to be resolved by a jury appears particularly problematic when one considers that the principal purpose underlying the venue statutes from a defendant's perspective—to protect a defendant from being required to stand trial in a distant and unduly burdensome locale—can be meaningfully effectuated only if a defendant's venue challenge is considered and resolved prior to trial, well before a jury is empanelled or any issue is submitted to it. In addition, unless the jury is instructed to return a separate special verdict on the issue of venue before returning a general verdict, a finding that the proceeding has been brought in an improper venue can result in an unwarranted acquittal, rather than in a new trial in an authorized venue. Because in this case defendant failed at trial to provide an appropriate jury instruction or authority supporting the giving of such an instruction, we have no occasion to determine whether, in the absence of legislative action, it would be appropriate for this court to revisit the lengthy and uniform line of decisions holding that the issue of venue presents a question of fact to be determined by a jury. (See *People v. Megladdery, supra*, 40 Cal.App.2d 748, 766 ["In view of the long line of decisions [treating the question of venue as a jury question], it is our belief that if the rule is to be changed it should be done by the legislature . . . ."].)