Filed 7/21/16  P. v. Jackson CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D067888 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD245817) |
| TIM JACKSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, David M. Rubin, Judge.  Affirmed.

David McNeil Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Barry Carlton, Deputy Attorney General, for Plaintiff and Respondent.

A jury found defendant Tim Jackson guilty of robbery (Pen. Code,[1] § 211), attempted robbery (§§ 211 & 664) and two counts of assault (§ 240). The trial court sentenced Jackson to a determinate term of eight years and a consecutive indeterminate term of 50 years to life.

On appeal, Jackson asserts the court abused its discretion by granting the prosecution's motion to consolidate two cases arising from separate incidents. He also asserts that, even if granting the consolidation motion was within the court's discretion, reversal is required because the joinder resulted in "gross unfairness" in violation of his due process rights. We reject these assertions and affirm the judgment of conviction.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

A. *Robbery of Cash Plus Store (2013 Incident)*

Gino Viskovic was the owner of a check-cashing business called Cash Plus located in a shopping complex in San Diego. On January 18, 2013, about 7:00 p.m., he began closing down for the evening when he noticed a man in the lobby. Viskovic asked the man if he needed anything, and the man immediately left without answering. On January 22, 2013, about 7:00 p.m., Dante Lewis and another man confronted Viskovic as he was closing his business for the evening. Lewis was the man Viskovic had seen four nights earlier. While Lewis held Viskovic at gunpoint in a bathroom, the other man, later

---

1    All further statutory references are to the Penal Code unless otherwise specified.

2    Additional factual and procedural history relevant to the specific claims of error are discussed in connection with those issues.

identified as Jackson, plundered the store. The robbers took approximately $20,000 in cash, various receipts and a purple cigarette lighter.

A woman shopping at a nearby grocery store saw Lewis and Jackson enter Cash Plus. She noticed them because one of the men was loitering suspiciously and looked like he was watching out for something. The woman called the police, who arrived as the men were exiting the store. After the officers ordered the men to stop, the men split up and ran. Two officers captured Lewis as he tried to cross University Avenue. They recovered his cellphone.

Jackson, who wore a blue hoodie, ran through a nearby laundromat and out the back. After briefly losing sight of Jackson after he entered the laundromat, two other officers saw him climbing an embankment behind the laundromat. The police followed Jackson, who scaled a barbed wire fence into an apartment complex. Shortly thereafter, an apartment resident yelled from his balcony that there was a man hiding on his patio. Officers found Jackson crouched behind a large glass table.

Jackson was carrying $9,548 in cash, a purple cigarette lighter, receipts from the Cash Plus store and a latex glove. Police also found Jackson's van, which was missing license plates, parked two rows away from the Cash Plus store. Inside the van was Jackson's cellphone, empty license plate frames and dealer plates. Police subsequently found incriminating text messages between Jackson's and Lewis's cellphones.

After his arrest, Jackson made—and then skipped out on—bail. Although Viskovic identified Lewis as one of the suspects, he was unable to identify Jackson, both on the day of the robbery and at trial, as the other suspect.

3

At trial, Jackson's defense was that he was not Lewis's accomplice. He testified that he had been panhandling in the area near where he was apprehended in order to earn enough money to buy some drugs and that, while he was urinating near the apartment complex's dumpster, someone he knew ran by and threw a blue jacket on the ground. Jackson further testified that he picked up the jacket and found a wad of money, which he put in his pocket; that he subsequently threw the jacket down and hid because the jacket's owner had previously assaulted him; and that he worried the jacket's owner would be upset if he found Jackson with the jacket.

B. *Attempted Robbery of Check Into Cash Store (2014 Incident)*

On August 12, 2014, managers of a Kentucky Fried Chicken (KFC) in Lemon Grove noticed a white car, which had been on the lot for hours and which had been backed into a parking spot facing the nearby Check Into Cash store. One of the managers saw a man in the driver's seat exit the car, then get right back in. The manager wrote down the car's license plate number.

The following day, the same car was again parked in the KFC lot, but it no longer had license plates. The manager saw the same man from the day before—subsequently identified as Jackson—wearing a construction vest. The manager saw the man pick up orange safety cones from the front of a neighboring restaurant and put them in the car's trunk. The manager called the police. After a patrol car arrived, the white car sped away.

On August 14, 2014, another KFC manager—who had been informed of the white car and its driver's suspicious activity—saw the car again parked in the lot. The manager

called police.  The manager also saw what appeared to be orange safety cones set up in front of the Check Into Cash store and a man carrying a large black plastic trash bag.

The manager of the Check Into Cash store, Corazon Hernandez, testified that when she arrived to open the store, she noticed the cones and thought they were odd.  As she walked to the front door, she saw nearby a man later identified as Jackson.  As soon as she opened the door, Jackson grabbed her by the neck and tried to push her inside.  Hernandez fought back and screamed.  Alerted by the screams, the owner of a neighboring business, David Nguyen, saw Jackson trying to push Hernandez into the store.  Nguyen yelled at him to stop.  Jackson, still carrying the trash bag, ran towards the white car in the parking lot with Nguyen in pursuit.

Another bystander, Marcus Pino, testified he heard the commotion and joined Nguyen in his pursuit of Jackson.  As Jackson neared the white car, he turned and pointed a gun at Pino and Nguyen.  Jackson got into the car and drove away.

The police ran the car's license plates and discovered it was a rental car.  The car was due back to the rental agency on the day of the attempted robbery.  Police staked out the rental agency lot.  Jackson drove the car near the lot where he met an acquaintance, Princess King.  Jackson turned the car over to King, who had rented it, and King returned the car to the rental agency.

After securing the car as evidence, inside detectives found a large black plastic trash bag and a pair of pliers.  The police also discovered that tamper-proof screws used to affix the license plates had been replaced with regular screws.  The detectives removed

the license plates and subsequent testing revealed Jackson's thumbprints on the rear plate. Jackson was later arrested.

C. *Motion for Consolidation*

Before trial, the People moved to consolidate the charges stemming from the 2013 and 2014 incidents on the ground the evidence established Jackson's identity, intent and modus operandi. The People argued that Jackson could not show a substantial danger of prejudice in joining the cases. Jackson countered that the two incidents were not sufficiently similar to warrant consolidation and that, because the forensic evidence and witness testimony of the 2014 incident was much stronger than the evidence of the 2013 incident, the potential for unfair prejudice was great. After briefing and oral argument, the trial court granted the People's motion.[3]

## DISCUSSION

Repeating the arguments made in the trial court, Jackson asserts the trial court erred when it combined the trials for the charges that stemmed from the 2013 and 2014 incidents.

---

[3] The consolidated information charged Jackson with robbery (count 1), grand theft of personal property (count 2), failure to appear while on bail (count 3), attempted robbery (count 4), assault with a semiautomatic firearm (counts 5 & 7), and assault with a firearm (counts 6 & 8). Jackson pleaded guilty to count 3, and the trial court dismissed count 2. For counts 5 and 7, the jury found him not guilty. For counts 6 and 8, the jury found him guilty of the lesser included offense of assault. Counts 1 through 3 refer to the 2013 incident. Counts 4 through 8 refer to the 2014 incident.

A. *Governing Law*

Section 954 provides in part: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated." The statute further provides that a court may exercise its discretion and order separate trials of different offenses or counts in the information "in the interests of justice and for good cause shown." (§ 954.)

In general, the law prefers consolidation of charges. (*People v. Soper* (2009) 45 Cal.4th 759, 771 (*Soper*); *People v. Bean* (1988) 46 Cal.3d 919, 939-940.) " 'Joinder of related charges, whether in a single accusatory pleading or by consolidation of several accusatory pleadings, ordinarily avoids needless harassment of the defendant and the waste of public funds which may result if the same general facts were to be tried in two or more separate trials [citation], and in several respects separate trials would result in the same factual issues being presented in both trials.' " (*People v. Ochoa* (1998) 19 Cal.4th 353, 409.)

Accordingly, when the statutory requirements for joinder are met, the burden is reversed and the defendant "must make a ' "*clear showing of prejudice* to establish that the trial court *abused its discretion*" ' " in denying severance. (*Soper*, *supra*, 45 Cal.4th at p. 774.) "In determining whether a trial court abused its discretion under section 954 in

7

declining to sever properly joined charges, 'we consider the record before the trial court when it made its ruling.' " (*Ibid.*)

" ' " 'Refusal to sever may be an abuse of discretion where: (1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain of the charges are unusually likely to inflame the jury against the defendant; (3) a "weak" case has been joined with a "strong" case, or with another "weak" case, so that the "spillover" effect of aggregate evidence on several charges might well alter the outcome of some or all of the charges; and (4) any one of the charges carries the death penalty or joinder of them turns the matter into a capital case.' " ' " (*People v. Ochoa* (2001) 26 Cal.4th 398, 423; see *Soper*, *supra*, 45 Cal.4th at p. 775.)  "We then balance the potential for prejudice to the defendant from a joint trial against the countervailing benefits to the state." (*Soper*, *supra*, 45 Cal.4th at p. 775, fn. omitted.)

"If the evidence underlying the charges in question would be cross-admissible, that factor alone is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges." (*Soper*, *supra*, 45 Cal.4th at pp. 774-775.)  However, " 'lack of cross-admissibility is not, by itself, sufficient to show prejudice and bar joinder.' " (*People v. Geier* (2007) 41 Cal.4th 555, 575.)

B. *Analysis*

As an initial matter, Jackson concedes that the statutory requirements for joinder were met.  Therefore, we must determine whether Jackson made a " ' "*clear showing of prejudice* to establish that the trial court *abused its discretion*" ' " in denying severance. (See *Soper*, *supra*, 45 Cal.4th at p. 774.)

8

1. <u>Cross-Admissibility</u>

Jackson argues that the evidence surrounding the two incidents was not cross-admissible because it did not meet the high degree of similarity required to prove identity.  We disagree.

Evidence Code section 1101, subdivision (b) provides:  "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act."

There is a "continuum concerning the degree of similarity required for cross-admissibility, depending upon the purpose for which introduction of the evidence is sought: '*The least degree of similarity . . . is required in order to prove intent*. [Citation.] . . .  In order to be admissible [for that purpose], the uncharged misconduct must be sufficiently similar to support the inference that the defendant " 'probably harbor[ed] the same intent in each instance.' " ' " (*Soper*, *supra*, 45 Cal.4th at p. 776.) "By contrast, a higher degree of similarity is required to prove common design or plan, and the highest degree of similarity is required to prove identity." (*Ibid*., fns. omitted.) For similarities to establish identity, " '[t]he pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.' " (*People v. Ewoldt* (1994) 7 Cal.4th 380, 403.)

A trier of fact may properly consider "other crimes" evidence to prove intent "so long as (1) the evidence is sufficient to sustain a finding that the defendant committed

9

both sets of crimes [citations], and further (2) . . . 'the factual similarities among the charges tend to demonstrate that in each instance the perpetrator harbored' the requisite intent."  (*Soper*, *supra*, 45 Cal.4th at p. 778.)

As stated, Jackson contends the evidence surrounding the 2013 and 2014 incidents was not sufficiently similar to establish his identity.  He argues that both incidents involved typical and undistinguished robberies of check-cashing businesses and that there were as many differences as there were similarities.  He points to the facts that the 2013 incident involved two perpetrators and occurred in the evening, whereas the 2014 incident involved a single perpetrator and occurred in the morning.

The People respond that even if the evidence could not be used for purposes of establishing Jackson's identity, the evidence would be admissible under Evidence Code section 1101, subdivision (b) in separate trials of either incident to establish the crimes were part of the same plan or scheme and to show Jackson's intent to rob the check-cashing businesses.  We agree.  Indeed, both incidents involved check-cashing businesses and there was evidence that Jackson cased both target businesses.  Moreover, in both incidents Jackson parked his vehicle near the target business, poised for a quick getaway.

2.  Other Factors

Further, assuming arguendo the evidence underlying the 2013 and 2014 incidents was *not* cross-admissible, we note that fact alone would not itself establish prejudice or an abuse of discretion in this case.  (See *Soper*, *supra*, 45 Cal.4th at p. 775; § 954.1.) Here, the remaining three factors used to determine whether joinder was appropriate show consolidation of the charges was not "outside the bounds of reason."  (See *Soper*, at

10

p. 774.)  As the trial court correctly noted, neither the 2013 nor the 2014 incident was particularly inflammatory, nor was the death penalty at issue in either incident.

As to Jackson's argument that the strong evidence against him in the 2014 case altered the outcome in the 2013 case, we agree with the People that the evidence in both cases was strong.

In the case of the 2014 incident, Jackson does not dispute he was the perpetrator. As for the 2013 incident, Jackson disputed he was the perpetrator, stating that he was only in the area of the robbery to buy drugs.  Though Jackson maintained someone else committed the 2013 robbery, the evidence against him being involved in that robbery was overwhelming.

Such evidence included text messages about committing a robbery between the cellphones of Jackson and Lewis, the latter of which was undisputedly one of the robbers in the 2013 incident.  Jackson also was found in the area of the robbery with almost $10,000, or about half of the money taken from the store, receipts from the store *and*, of course, the iconic purple lighter also taken from the store.  As such, we separately conclude the court properly exercised its broad discretion when it granted the People's consolidation motion.

3. No Gross Unfairness Resulted After Consolidation

Finally, "even if a trial court's ruling on a motion to sever is correct at the time it was made, a reviewing court still must determine whether, in the end, the joinder of counts or defendants for trial resulted in gross unfairness depriving the defendant of due process of law."  (See *Soper*, *supra*, 45 Cal.4th at p. 783.)  Furthermore, where a

11

defendant wishes to testify on one count, but not, with good reason, on another count, the defendant must show that " ' "he has both important testimony to give concerning one count and [a] strong need to refrain from testifying on the other." ' " (*People v. Sandoval* (1992) 4 Cal.4th 155, 174.)

Jackson argues that because he wanted to testify as to the 2013 incident only, the jury would have an inevitable tendency to react negatively to his silence regarding the 2014 incident. The People counter that because Jackson did not raise the issue in the trial court, it is forfeited. We agree. (See *People v. Simon* (2001) 25 Cal.4th 1082, 1103.)

However, even if Jackson had raised the issue at trial, we agree with the People that no gross unfairness resulted. Although he testified he was merely panhandling in the area where the 2013 incident took place, nothing in the record indicates that he had a strong need not to testify about the 2014 incident. In any event, as the People point out, the fact that the jury rejected all the weapons enhancements alleged for the 2014 incident, acquitted him of the felony assault charges and convicted him only of the attempted robbery and two misdemeanor assaults suggests that his silence did not hurt him.

Jackson also argues that the length of the jury's deliberations (a full day and a half) and the jury's requests to see exhibits and have testimony reread are indicative of prejudice by the joinder. We disagree with this contention, which in any event is entirely speculative. Indeed, Jackson's case involved two dozen witnesses and 76 exhibits presented over six court days. The jury's deliberations and requests reflect the complexity of the case and the jurors' diligence, not confusion. (See *People v. Cooper* (1991) 53 Cal.3d 771, 836-837; see also *People v. Houston* (2005) 130 Cal.App.4th 279,

12

301.)  On this record, we conclude in the end there was no "gross unfairness" to Jackson when the court consolidated the charges involving the 2013 and 2014 incidents.  (See *Soper*, *supra*, 45 Cal.4th at p. 783.)

## DISPOSITION

The judgment of conviction is affirmed.

BENKE, Acting P. J.

WE CONCUR:

HALLER, J.

McDONALD, J.