Filed 1/8/24 (opinion on transfer from Supreme Court)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MENIQUE LASHON,<br><br>    Defendant and Appellant. | A163074<br><br>(Contra Costa County<br>Super. Ct. No. 51814102) |

On September 1, 2023, we issued our original opinion affirming the judgment against defendant Menique Lashon based on her conviction for one count of second-degree murder and one count of first-degree murder, together with true findings of special circumstance allegations. In that opinion, we found Lashon had forfeited her ability to bring a California Racial Justice Act (CRJA; Pen. Code, § 745[1]) claim on direct appeal by failing to file a motion in the trial court before judgment was entered and we affirmed the judgment.

On November 15, 2023, having granted Lashon's petition for review, our Supreme Court remanded the case to us with directions to vacate our opinion[2] and reconsider the cause in light of Assembly Bill No. 1118 (2023–

---

[1]    All statutory references are to the Penal Code.

[2]    Our Supreme Court ordered the depublication of our original opinion. Depublication does not bear on the merits of the case before us. (*People v. Salazar* (2023) 15 Cal.5th 416, 425, fn. 4; see California Rules of Court, rule 8.1125(d) ["[a] Supreme Court order to depublish is not an expression of the court's opinion of the correctness of the result of the decision or of any law stated in the opinion"].)

1

2024 Reg. Sess.) (AB 1118), which modified the CRJA to allow for additional avenues of relief for claims made on direct appeal. Having now considered AB 1118's amendments to the CRJA, we find the long-standing procedural appellate rules governing forfeiture of issues continue to apply and again affirm.

Lashon has also filed a separate motion requesting we stay the appeal and remand the matter to the superior court to allow her to file a CRJA motion. Under the circumstances presented here, we do not find good cause to grant this request.

## DISCUSSION

## I. GOVERNING LAW – SECTION 745 AS AMENDED BY AB 1118

In enacting section 745, the Legislature laudably declared its intention "to eliminate racial bias from California's criminal justice system because racism in any form or amount, at any stage of a criminal trial, is intolerable, inimical to a fair criminal justice system, is a miscarriage of justice under Article VI of the California Constitution, and violates the laws and Constitution of the State of California. Implicit bias, although often unintentional and unconscious, may inject racism and unfairness into proceedings similar to intentional bias. The intent of the Legislature is not to punish this type of bias, but rather to remedy the harm to the defendant's case and to the integrity of the judicial system. It is the intent of the Legislature to ensure that race plays no role at all in seeking or obtaining convictions or in sentencing. It is the intent of the Legislature to reject the conclusion that racial disparities within our criminal justice are inevitable, and to actively work to eradicate them." (Stats. 2020, ch. 317, § 2, subd. (i).)

To further the goal of eliminating racial bias in criminal proceedings, subdivision (a) of section 745, provides that "[t]he state shall not seek or

2

obtain a criminal conviction or seek, obtain, or impose a sentence on the basis of race, ethnicity, or national origin." Pertinent to our discussion, a violation of section 745 "is established if the defendant proves, by a preponderance of the evidence," that "[d]uring the defendant's trial, in court and during the proceedings," a trial judge "exhibited bias or animus towards the defendant because of the defendant's race, ethnicity, or national origin, whether or not purposeful." (*Id.*, subd. (a)(2)).

Subdivision (b) of section 745 informs defendants how to seek relief during various stages of a criminal proceeding. As originally enacted, effective January 1, 2021, defendants could seek relief by filing a motion in the trial court or, if judgment had been imposed, by filing a "petition for writ of habeas corpus or a motion under section 1473.7, in a court of competent jurisdiction, alleging a violation of subdivision (a)." (§ 745, subd. (b).) When enacted, section 745 applied only *prospectively* to cases in which judgment had not been entered prior to January 1, 2021. (Stats. 2020, ch. 317.) Therefore, in all eligible cases – including Lashon's case – the defendant had the opportunity to raise a CRJA claim in the trial court.

Section 745 was later amended effective January 1, 2023 to provide for *retroactive* application to judgments that were not final and created a timeline for judgments entered before January 1, 2021. (Stats. 2022, ch. 739, § 2.) After retroactive application became possible, section 745 was modified by AB 1118 (Stats. 2023, ch. 464), effective January 1, 2024. The statute now provides that post-judgment CRJA claims based on the trial record may be raised on direct appeal from the conviction or sentence (including to cases with judgments entered before January 1, 2021). (*Ibid.*) The statute does not state that a defendant may raise a section 745 claim on direct appeal *for the first time* and does not refer to the general appellate rules governing the

3

preservation or forfeiture of claims presented on direct appeal.  In addition, a defendant may move to stay the appeal and request remand to file a section 745 motion in the trial court.  (*Ibid.*)

## II. SECTION 745 CLAIMS REMAIN SUBJECT TO GENERAL APPELLATE RULES OF FORFEITURE

In our original decision, we held Lashon's section 745 claim was not properly before us as she forfeited appellate review by failing to make a motion before entry of judgment.  Our decision was based on well-settled general appellate rules of forfeiture.  (See, e.g., *People v. Elliot* (2012) 53 Cal.4th 535, 572 [defendant forfeited claim that trial court exhibited racial bias during jury selection process by failing to raise the issue at trial].)  As we now explain, we hold AB 1118's amendments to section 745 do not change our analysis or conclusion.

The interpretation of section 745 as amended by AB 1118 is subject to de novo review.  (*People v. Burgess* (2022) 86 Cal.App.5th 375, 382.)  We first look at the statutory language based upon the customary meaning of that language; " ' "[t]he words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." [Citation.]  If the statutory language is susceptible of more than one reasonable interpretation, we must look to additional canons of statutory construction to determine the Legislature's purpose.  [Citation.] "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." ' " (*Carmack v. Reynolds* (2017) 2 Cal.5th 844, 849–850.)

4

## A. The Language of Section 745 Does Not Obviate the General Forfeiture Rules

As noted, section 745 was enacted effective January 1, 2021 and originally provided that the only methods for seeking relief for racial bias after entry of judgment were by way of a petition for writ of habeas corpus[3] or a motion under section 1473.7[4], in a court of competent jurisdiction. (§ 745, subd. (b); Stats. 2020, ch. 317, § 3.5.) While the Legislature provided a defendant could raise a violation of section 745 for the first time in a habeas petition (see fn. 4, *ante)*, there was no provision in section 745 "for raising a violation of the statute for the first time on direct appeal." (*People v. Simmons* (2023) 96 Cal.App.5th 323, 336 (*Simmons*).) Of course, this was

---

[3]      Section 1473 was amended and currently provides, in pertinent part, that "[n]otwithstanding any other law, a writ of habeas corpus may also be prosecuted after judgment has been entered based on evidence that a criminal conviction or sentence was sought, obtained, or imposed in violation of subdivision (a) of Section 745;" that "[a] petition raising a claim of this nature for the first time, or on the basis of new discovery provided by the state or other new evidence that could not have been previously known by the petitioner with due diligence, shall not be deemed a successive or abusive petition;" and "[i]f the petitioner has a habeas corpus petition pending in state court, but it has not yet been decided, the petitioner may amend the existing petition with a claim that the petitioner's conviction or sentence was sought, obtained, or imposed in violation of subdivision (a) of section 745." (§ 1473, subd. (e); see Stats. 2020, ch. 317, § 4; Stats. 2022, ch. 982, § 1.5; Stats. 2023, ch. 381, § 1.)

[4]      Section 1473.7 was amended and currently provides, in pertinent part, that a person who is no longer in criminal custody may file a motion to vacate a conviction or sentence on the basis that a conviction or sentence was sought, obtained, or imposed on the basis of race, ethnicity, or national origin in violation of subdivision (a) of section 745; and the motion "shall be filed without undue delay from the date the moving party discovered, or could have discovered with the exercise of due diligence, the evidence that provides a basis for relief under this section or Section 745." (§ 1473.7, subd. (a)(3),(c); Stats. 2020, ch. 317, § 5; Stats. 2021, ch. 420, § 1.)

during the time that the CRJA was only applicable to cases in which judgment had not been entered prior to January 1, 2021 (§ 745, former subd. (j); Stats. 2020, ch. 317, § 2); in other words, those defendants – including Lashon – whose trial court proceedings had not been completed by January 1, 2021 had the opportunity to raise a CRJA violation in the trial court prior to entry of judgment.

In the amendments to the statute effective January 1, 2023 (Stats. 2022, ch. 739, § 2), the Legislature made section 745 relief available in all cases in which judgment was not final, and created a timeline for retroactive relief that was sought in a petition for habeas corpus or a section 1473.3 motion in (1) capital cases and cases with certain immigration consequences (commencing January 1, 2023), (2) cases in which the defendant remained incarcerated (commencing January 1, 2024), (3) felony juvenile cases adjudicated on or after January 1, 2015 (commencing January 1, 2025), and (4) all other felony juvenile cases (commencing January 1, 2026). (§ 745, subd. (j); Stats 2022, ch. 739, § 2)

Subsequent to the 2023 amendments, the Legislature was asked to consider whether a defendant could pursue a post-judgment section 745 claim by avenues other than a petition for writ of habeas corpus or a section 1473.7 motion. (See Assem. Com. on Pub. Saf., Analysis of Assem. Bill No. 1118 (2023–2024 Reg. Sess., as amended Mar. 15, 2023, at p. 6.) The Legislature responded with AB 1118 (Stats. 2023, ch. 464), effective January 1, 2024, which now allows a defendant to seek review of a section 745 claim on direct appeal if the violation was based on the trial record. (§ 745, subd. (b).) As an alternate method, a defendant may request a stay of the direct appeal and remand to allow the filing of a motion in the trial court. (*Ibid*.)

By the AB 1118 amendment, the Legislature did not include any language indicating a section 745 claim could be presented on direct appeal *for the first time*. In the absence of such language, we conclude our review of a section 745 claim, like any other appellate claim, is subject to the general appellate rules of preservation and forfeiture of claims that could have been but were not made in the trial court. (See also *Finley v. Superior Court* (2023) 95 Cal.App.5th 12, 21 [in habeas corpus proceedings, court is to determine whether petitioner is entitled to relief "*and also whether the stated claims are for any reason procedurally barred;*" italics added].) As an appellate court, we may not add language to a statute or rewrite it to conform to an asserted intent that does not appear in the plain language. (*People v. Connor* (2004) 115 Cal.App.4th 669, 692.) "[O]ur task is ' "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted. . . ." [Citation.] We cannot add . . . language . . . when the Legislature did not.' " (*Hayes v. Temecula Valley Unified School Dist.* (2018) 21 Cal.App.5th 735, 748.)

Our interpretation is supported by an examination of other provisions in the statute addressing how to raise CJRA claims in the trial court. In 2022, the Legislature amended the statute to provide that a section 745 motion shall be made in the trial court "as soon as practicable upon the defendant learning of an alleged violation," and "[a] motion that is not timely may be deemed waived, in the discretion of the court." (§ 745, subd. (c); added by Stats. 2022, ch. 739, § 2.) When the Legislature again amended section 745 by AB 1118, it retained the waiver provision in subdivision (c) of section 745, which is consistent with the basic rationale of the forfeiture doctrine — i.e., " ' " 'to encourage a defendant to bring errors to the attention of the trial court, so they may be corrected or avoided and a fair trial had.' " ' "

7

(*People v. Simon* (2001) 25 Cal.4th 1082, 1103.)  The Legislature recognized that, for tactical reasons, some defendants might choose not to pursue a claim of racial bias in the trial court " 'in the hopes of an acquittal, with the thought that if those hopes did not materialize, the claim could be used to upset an otherwise valid conviction at a time when reprosecution might well be difficult.' "  (*Id*. at p. 1104 & fn. 15 [defendant's challenge to venue may be forfeited if not raised by timely motion in trial court as failure to make motion "often will reflect a strategic decision on part of the defense, and . . . improper venue is a defect that easily can be remedied if timely raised"].)

It makes little sense for the Legislature to prescribe a comprehensive procedure for making and adjudicating a section 745 motion at the trial level (including a specific waiver provision for untimely motions), only to allow defendants who could have but did not use that procedure (thereby preserving their claim for review) to bypass that procedure and pursue a section 745 claim for the first time on direct appeal.

### B.    *Legislative History*

To the extent it may be argued section 745 is ambiguous as to whether a defendant may raise a section 745 claim on direct appeal for the first time, we conclude the legislative history indicates the Legislature did not intend to allow a defendant to pursue such a claim for the first time on direct appeal where it could have been but was not raised in the trial court.

At the time the Legislature enacted AB 1118, it was made aware of general appellate rules of preservation and forfeiture of issues on direct appeal, and exceptions to those rules as judicially applied in analogous contexts.  In explaining AB 1118's technical changes being recommended to ensure racial bias claims were "processed more efficiently" and that "the intent of the law" was followed, the bill's author explained as follows:

8

[A] CRJA claim based on the trial record may be raised on direct appeal from the conviction or sentence, not just in a habeas petition. (*In re Carpenter* (1995) 9 Cal.4th 634, 636 ['Appellate jurisdiction is limited to the four corners of the record on appeal . . . .'].) . . . [and] would also clarify that the defendant/appellant may move to stay the appeal and request remand to the superior court to file a CRJA motion. This may be necessary to permit the trial court to rule on the claim in the first instance, and to allow the parties to fully litigate the issue. (See *Gray1 CPB, LLC v. SCC Acquisitions, Inc.* (2015) 233 Cal.App.4th 882, 897 ['[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented in the trial court. Thus, we ignore arguments, authority and facts not presented and litigated in the trial court'] (citation and quotations omitted); see also *People v. Welch* (1993) 5 Cal.5th 228, 237 ['Reviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile or wholly unsupported by substantive law then in existence'].) [¶] Generally, a trial court loses jurisdiction once an appeal is filed. But in other post-conviction relief contexts, stays and remands have been permitted by the courts – for example to file a petition to vacate a felony murder conviction and be resentenced under SB 1437 (Skinner), Chapter 1015, Statutes 2018. (See *People v. Martinez* (2019) 31 Cal.App.5th 719, 729 ['A Court of Appeal presented with such a stay request and convinced it is supported by good cause can order the pending appeal stayed with a limited remand to the trial court for the sole purpose of permitting the trial court to rule on a petition under section 1170.95.'].)

(Assem. Com. Public Saf., com. on Assem. Bill No. 1118 (2023–2024 Reg. Sess.) as amended Mar. 15, 2023, pp. 5–6.)

Given the above discussion, we find it significant that the Legislature did not include any language to the effect that a section 745 claim may be raised on direct appeal "for the first time," which it could have easily done just as it did when amending the habeas proceedings. (See fn. 3, *ante*.) The omission of such language strongly suggests the Legislature intended to leave

9

the issues of preservation and forfeiture of claims on direct appeal to be resolved by the courts based on long-standing procedural canons. " 'We are compelled to add language only in extreme cases where, as a matter of law, we are convinced that the Legislature, through inadvertence, failed to utilize the word or words which give purpose to its pronouncements.' " (*Settle v. State of California* (2014) 228 Cal.App.4th 215, 220 (*Settle*).) Here, we see no compelling reason to add words to the statute as the legislative history does not evince an intent by the Legislature to strip the courts of their discretionary authority to determine whether a section 745 claim is reviewable on direct appeal where the claim could have been but was not presented in the trial court.[5]

Lashon argues forfeiture should not apply because the legislative intent as expressed in the statute and subsequent amendments is that "all who can make a prima facie case for a RJA violation in their cases should have their claims heard," and "[a]pplication of the forfeiture doctrine here cannot be viewed as a remedy to eliminate discriminatory practices, but only continue to cover up implicit biases which may not always be readily identifiable." While we agree the Legislature meant to provide remedies for racial bias, "statutory statement of purpose does not override the express limits the Legislature has placed in the statutory text . . . and in the manner the

---

[5] Our original opinion was published approximately one month prior to the Governor's signing of AB 1118. In that opinion, we explained why general appellate rules of forfeiture barred review of Lashon's section 745 claim on direct appeal and that no exceptions to forfeiture applied in this case. While the Legislature is presumed to be aware of existing judicial interpretations of a statute when it chooses to amend a statute (*In re Joseph T., Jr.* (2008) 163 Cal.App.4th 787, 795–796), given the timing of our opinion and the status of AB 1118 in the legislative process, we do not rely on this presumption in reaching our decision.

statutory text has specified" for a defendant to pursue a remedy for racial bias. (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 897.)

Accordingly, taking into account the purpose of section 745 – to swiftly and effectively address racial bias as soon as practical upon a defendant learning of an alleged violation — and "the substantial state interest in protecting the integrity of the process from improper 'sandbagging' by a defendant" (*Simon, supra*, 25 Cal.4th at p. 1104) along with the language of the statute and its legislative history, we conclude a defendant may be found to have forfeited a section 745 claim of racial bias made for the first time on direct appeal in the absence of a showing that an exception to the forfeiture doctrine applies. If we are incorrect and the Legislature meant to allow a defendant to raise a section 745 claim for the first time on direct appeal, and to dispense with the rules of preservation and forfeiture for a claim that could have been but was not raised in the trial court, the Legislature is at liberty to amend the statute. (See *Settle, supra*, 228 Cal.App.4th at p. 220.)

## III.   LASHON'S SECTION 745 CLAIM ON DIRECT APPEAL IS FORFEITED

Lashon asserts the general forfeiture rule should not apply in this case because her section 745 claim involves a "substantial right" or "an important issue of constitutional law." Her reliance on *In re Sheena K.* (2007) 40 Cal.4th 875 for this assertion is misplaced. In that case, our Supreme Court held a juvenile could present for the first time a constitutional challenge to a probation condition on direct appeal as it presented "a pure question of law, easily remediable on appeal by modification of the condition." (*Id.* at p. 888.) However, the court did *not* conclude "that 'all constitutional defects in conditions of probation may be raised for the first time on appeal, since there may be circumstances that do not present "pure questions of law that can be

11

resolved without reference to the particular sentencing record developed in the trial court." [Citation.] In those circumstances, "[t]raditional objection and waiver principles encourage development of the record and a proper exercise of discretion in the trial court." ' " (*Id.* at p. 889.) Simply put, Lashon's claim of relief does not fall under the *In re Sheena K.* exception because it does not present a pure question of law that can be resolved without consideration as to what occurred during the trial and sentencing proceedings.

Lashon also argues the general forfeiture rule should not apply because she did not have a meaningful opportunity to raise a section 745 claim in the trial court and an objection would have been futile. According to Lashon, there were no obvious signs of racial bias by the trial judge "[u]ntil the African American defense attorney corrected the judge on her misassumption that the attorney had not followed the correct procedure on a subpoena duces tecum for medical records of a victim." "However, once this judge felt challenged by this attorney of color, both she and her client became targets of increasing hostility. This behavior seems most likely explained by the implicit bias held by the judge which was unleashed only after she felt her authority questioned. When the trial attorney did object to the trial court's behaviors, she was met with denials and greater hostility."

We find this argument unavailing as Lashon has not demonstrated she could not object or an objection would have been futile. Even if her counsel did not want to antagonize the trial judge during the trial, a section 745 motion could have been filed immediately after the trial judge gave her reasons for choosing the sentence she was about to impose. (See, e.g., *People v. Garcia* (2022) 85 Cal.App.5th 290, 295–298 (*Garcia*) [trial court abused its

discretion in denying request for continuance of sentencing to allow defendant time to prepare a motion for substantive relief under § 745].)[6]

## IV. LASHON'S MOTION TO STAY APPEAL AND REMAND TO FILE SECTION 745 MOTION IS DENIED

Lashon requests we stay the appeal and remand to allow her to file a section 745 motion in the superior court. While there may be circumstances in which a court of appeal chooses to exercise its discretion to stay a CRJA appeal and remand, we find no basis for doing so in this case.

We have reviewed the evolution of the CRJA *ante*. In brief, CRJA relief was originally limited to cases in which judgment had not been entered prior to January 1, 2021 (such as Lashon's case). The Legislature enacted amendments making section 745 relief available in all cases in which judgment was not final and created a timeline for retroactive relief spanning 2023 to 2026. The following year, the Legislature enacted AB 1118, which now allows a defendant to seek review of a section 745 claim on direct appeal if the violation was based on the trial record or, in the alternative, request a stay of the direct appeal and remand to allow the filing of a motion in the trial court. This stay and remand procedure was designed "to permit the trial

---

6    To the extent Lashon asserts "[t]he behavior of the trial judge cannot be sanctioned even without reference to the Racial Justice Act," citing to *People v. Nieves* (2021) 11 Cal.5th 404 (*Nieves*), that issue has been forfeited because it was not presented in compliance with the rules governing briefs filed in this court. It was not presented under a separate point heading and was not supported by a cogent argument as to why we should follow *Nieves* in this case. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [each brief must "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation to authority"]; *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 ["citing cases without any discussion" as to why the cases should be followed "results in forfeiture" of the appellate claim].)

court to rule on the claim in the first instance, and to allow the parties to fully litigate the issue." (Sen. Com. on Pub. Saf., Analysis of Assem. Bill No. 1118 (2023–2024 Reg. Sess.) as amended May 18, 2023, at p. 7; Assem. Com. on Pub. Saf., Analysis of Assem. Bill No. 1118 (2023–2024 Reg. Sess.) as amended Mar. 15, 2023, at p. 6.)  Therefore, it appears the Legislature intended the stay and remand procedure to be available in cases that need further factual development.

Lashon's direct appeal is based solely on her claim of a violation of section 745.  She does not identify what factual development is needed regarding that claim and simply maintains that the record is sufficient to require a hearing to determine if the trial judge exhibited implicit bias.  As Lashon both had the opportunity to raise a CRJA violation and develop the record in the trial court and fails to identify what factual development (if any) is now needed in the trial court, we decline to stay and remand the matter.

This does not leave Lashon without an adequate remedy.  Indeed, as she has informed us, her claim of a violation of section 745 has been made in a petition for a writ of habeas corpus filed and currently pending in the Supreme Court, a court of competent jurisdiction in which to file the petition as required under section 745, subdivision (b).  (*In re Menique Lashon*, petn. pending, ptn. filed Oct. 16, 2023, S282242.)[7]

## DISPOSITION

Our September 1, 2023 opinion is vacated.  The judgment is affirmed.

---

[7]     While Lashon has not filed the requisite separate request for judicial notice and instead has made the request in her motion to stay, we grant her request to take judicial notice of certain declarations that she has attached to her motion to stay and has included in her petition for writ of habeas corpus filed in the Supreme Court.  (*Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1375.)

14

_____

Petrou, J.

WE CONCUR:


_____

Tucher, P.J.


_____

Rodríguez, J.

A163074/*People v. Lashon*

15

Trial Court:        Contra Costa County Superior Court

Trial Judge:        Hon. Terri. Mockler

Counsel:           Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Katie Stowe, Deputy Attoeny General, and Linda Murphy, Deputy Attorney General, for Plaintiff and Respondent.

First District Appellate Project, Marylou Hillberg, for Defendant and Appellant.