Filed 2/19/25  P. v. Ali CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ASHIA NAKISIA ALI et al.,<br><br>    Defendants and Appellants. | 2d Crim. No. B330506<br>(Super. Ct. No. BA381310)<br>(Los Angeles County) |

Codefendants Ashia Nakisia Ali and Antonio Dale Burton appeal from the denials of their Penal Code[1] section 1172.6 petitions for resentencing.  Ali contends the denial of her petition should be vacated because the trial court considered inadmissible hearsay at the evidentiary hearing.  Burton similarly contends the court relied on inadmissible evidence when denying his petition, without which substantial evidence does not support the finding that he committed murder.  He also contends his admission of a section 12022.5, subdivision (a) firearm allegation

_____

[1] Unlabeled statutory references are to the Penal Code.

does not render him categorically ineligible for resentencing relief.  We affirm.

FACTUAL AND PROCEDURAL HISTORY

*The underlying crimes*[2]

Jeremy Owens and Darnell Jackson were walking home from a club one morning.  Neither was a gang member, but Jackson was wearing a red baseball cap and red shoes similar to clothing worn by Blood gang members.  An SUV drove slowly past Owens and Jackson.  One of the men inside asked the two where they were from.  Another person in the SUV then "threw up a gang sign" before the vehicle drove away.

Three people—two males and one female—later walked toward Owens and Jackson as they continued down the street.  The shorter male asked, "Where you all from?"  Jackson replied, "I don't gang bang.  I don't bang."  He also displayed the tattoos on his arms to show that they were not gang related.

The three people walked a few steps in the other direction.  The shorter man then spun around and shot Jackson in the back of the head.  He and his accomplices also shot at Owens.  A bullet struck Owens's forehead as he ran away.

*Statements made by Ali, Burton, and their accomplices that were admitted at the preliminary hearing*

Jean Palacios was a member of the same gang as Ali, Burton, and their accomplices in the shootings of Owens and Jackson, Charles Allen and Brandon Maxwell.  Allen told Palacios that he, Ali, Burton, and Maxwell "caught some Bloods" and shot them.  Ali said that she was "a real Blood killer."

---

[2] The factual summary is taken from the preliminary hearing, which the trial court considered at the section 1172.6 evidentiary hearing.

2

Burton took Palacios to the scene of the shooting and pointed out "where they killed the Blood." Burton said that they had killed one person but another got away.

Burton told Palacios that he and his accomplices walked up to Owens and Jackson and asked them where they were from. The two said "they didn't bang." Burton, Maxwell, and Ali then acted like they were walking away. Once the two victims also began to walk away, Burton said that he, Ali, and Maxwell "ran up on them and shot them." The three then ran back to the car where Allen was waiting and drove away.

Palacios said that while in jail Allen and/or Maxwell drew a map showing the area where Owens and Jackson were shot. Palacios saw the map sitting between Allen and Maxwell and overheard Allen describe "all the players that were part of the shooting," including Ali and Burton.

Laroneisha Age told police that Ali bragged to her about committing a retaliatory shooting hours after Owens and Jackson were shot. During the preliminary hearing, Age said what she had told police was "not true."

Travon Francis told police that Maxwell said that he shot someone in the head. Francis also told police that Ali described what Jackson was wearing when she, Burton, and Maxwell shot him, and described the car Allen had driven them in. She later showed him three firearms. During the preliminary hearing, Francis said that he had lied to police.

After the preliminary hearing Ali pleaded no contest to committing voluntary manslaughter (§ 192, subd. (a)) and admitted that she was personally armed with a firearm when she did so (§ 12022.53, subd. (b)). Burton pleaded no contest to voluntary manslaughter and admitted a personal-use firearm

allegation (§ 12022.5, subd. (a)).

*Section 1172.6 proceedings*

Ali and Burton filed petitions for section 1172.6 resentencing. At their combined evidentiary hearing the prosecutor said that he would not call any witnesses but would rely instead on the preliminary hearing transcript, a minute order reflecting Ali's plea, Burton's plea transcript, and sentencing transcripts for both codefendants. Ali said she did not object to the court's consideration of the preliminary hearing transcript, but claimed "there's double hearsay as the only evidence against" her. Burton similarly objected on "double hearsay" grounds but did not point to any specific testimony he considered inadmissible. He also objected to "any other improper evidence under [Senate Bill No.] 775."

The trial court said that preliminary hearing testimony admitted pursuant to section 872, subdivision (b) was inadmissible at a section 1172.6 evidentiary hearing and would not be considered. As to the "double hearsay" objections, the court said that the statements of Ali and Burton would be admissible against both codefendants as statements of the declarants themselves and statements against penal interests. Statements of other codefendants would be admissible against both Ali and Burton as statements against penal interests. Neither Ali nor Burton challenged these rulings.

The prosecutor argued each codefendant acted with malice. He claimed that there was a gang-related motive for the shooting in that Ali and Burton were retaliating for the recent shooting of one of their fellow gang members by "hunting" for rivals. He argued there was evidence of three shooters, and noted that both Ali and Burton admitted to personally using firearms, indicating

4

that they were among those who were shooting. He acknowledged, however, that it was unclear who fired the fatal shot. At minimum, Ali and Burton each acted with the intent to kill by aiding and abetting a murder.

Ali countered that her plea "was not a factual plea" because it was entered pursuant to *People v. West* (1970) 3 Cal.3d 595. She thus did not "take responsibility for the firearm enhancement." She also claimed that her young age—16 years old at the time of the murder—undermined any evidence that she was bragging about her involvement.

Burton similarly argued his admission of a firearm allegation should be given little weight since the plea was entered pursuant to *People v. West*. He also urged the court to consider his young age at the time of the crime. He said that at most the evidence established that he was guilty of assault with a deadly weapon.

The prosecutor noted there were at least 18 gunshots fired at Owens and Jackson, which went beyond assault and was evidence of intent to kill. Witnesses said that both Ali and Burton were involved in the shooting. Burton claimed the same thing and said that both he and Ali were among the shooters. Ballistics corroborated those statements.

After considering the arguments and evidence presented, the trial court denied Ali's and Burton's respective section 1172.6 petitions. The court noted that even though the codefendants' pleas were entered pursuant to *People v. West,* it did give "some weight" to their manslaughter convictions and admissions to personally using firearms. The court also observed that the preliminary transcript contained no evidence that the firearms were displayed in a menacing manner or used in any way other

5

than to shoot at the victims.

According to Owens's preliminary hearing testimony, he and Jackson were walking home when an occupant of a car driving by threw up a gang sign. Three people then approached and asked where the two were from. Owens and Jackson said "nowhere" and turned to walk away. At that point the three individuals opened fire.

Ali's and Burton's respective statements to Palacios were consistent with Owens's testimony. After the incident Ali told Palacios that she's now a "real Blood killer." Burton told Palacios that he walked up to Owens and Jackson and "banged on them." He said that he, Ali, and Maxwell all shot at Owens and Jackson when they turned to walk away.

The trial court concluded that the prosecutor proved beyond a reasonable doubt that Ali and Burton committed "malice murder." The two and their accomplices planned the murder to "retaliate against somebody [who] had been killed that evening at a party. The four of them got in the car[;] they drove into rival gang territory, with loaded firearms[;] three got out[;] and three shot." The court therefore denied the section 1172.6 petitions.

## DISCUSSION

### *Legal principles*

"In 2018, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) to 'amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who [was] not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human

6

life.' [Citation.] To accomplish these goals, Senate Bill 1437 redefined 'malice' in section 188, and narrowed the classes of persons liable for felony murder under section 189. [Citation.] It also added what is now section 1172.6 to the Penal Code, which permitted those convicted of felony murder or murder under a natural and probable consequences theory to petition to have their murder convictions vacated and to be resentenced on any remaining counts. [Citations.] This relief was subsequently extended to persons convicted of manslaughter and attempted murder. [Citation.]" (*People v. Allen* (2023) 97 Cal.App.5th 389, 394-395 (*Allen*).)

"A person may now petition for resentencing if: (1) the information allowed prosecutors to 'proceed under a theory of felony murder, murder under the natural and probable consequences doctrine[,] or [any] other theory under which malice is imputed to a person based solely on [their] participation in a crime, or attempted murder under the natural and probable consequences doctrine'; (2) the person was convicted of . . . manslaughter . . . ; and (3) the person could not now be convicted of murder . . . under the current versions of sections 188 and 189. [Citation.] If a person files a facially valid petition, the trial court must appoint counsel, if requested, and set the matter for a prima facie hearing. [Citation.] At that hearing the court may rely on the record of conviction and deny a petition if the petitioner is ineligible for section 1172.6 relief as a matter of law." (*Allen*, *supra*, 97 Cal.App.5th at p. 395, footnote omitted.)

If the petitioner makes a prima facie showing of eligibility for relief, however, the trial court must issue an order to show cause and set the matter for an evidentiary hearing. (§ 1172.6, subds. (c) & (d)(1).) During the evidentiary hearing prosecutors

7

must prove, beyond a reasonable doubt, that a petitioner convicted of manslaughter under prior versions of California law could still be convicted of murder under current law. (§ 1172.6, subd. (d)(3).) They may meet this burden by offering into evidence matters that were previously admitted into evidence and are admissible under current law, plus any new evidence they choose to proffer. (*Ibid.*) Hearsay admitted at a preliminary hearing pursuant to section 872, subdivision (b) may not be considered, however. (§ 1172.6, subd. (d)(3).) We review whether prosecutors met their burden for substantial evidence. (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.)

*Ali's petition*

Ali contends the denial of her section 1172.6 petition should be vacated because the trial court considered inadmissible hearsay evidence at the evidentiary hearing. She specifically challenges the court's consideration of: (1) preliminary hearing testimony admitted pursuant to section 872, subdivision (b); (2) Francis's statements to police implicating her in the shootings; (3) Age's statements doing the same; (4) Palacios's preliminary hearing testimony that Burton took him to the scene of the shooting and told him about it; and (5) Palacios's testimony that Allen told him that he, Ali, Burton, and Maxwell engaged in a retaliatory shooting. The Attorney General counters that the court did not consider section 872, subdivision (b) testimony, and notes that Ali did not specifically object to Francis's or Age's respective statements or to Palacios's testimony. We agree with the Attorney General.

Ali's contention that the trial court considered preliminary hearing testimony admitted pursuant to section 872, subdivision (b) is not supported by the record. The court stated that such

8

testimony was not admissible at an 1172.6 evidentiary hearing, and said that it did not consider it when denying her resentencing petition. We accordingly reject Ali's first evidentiary challenge.

Her remaining four challenges are forfeited. "A verdict or finding shall not be set aside . . . by reason of the erroneous admission of evidence unless" a party timely and specifically objects and any error "resulted in a miscarriage of justice." (Evid. Code, § 353.) The failure to lodge a " ' " ' "timely and specific objection" on the ground asserted on appeal makes that ground not cognizable.' " ' " (*People v. Tully* (2012) 54 Cal.4th 952, 1010.) This is because "[s]uch a failure 'deprives the trial court of the opportunity' to create a record and to 'correct potential error in the first instance.' " (*People v. Romero and Self* (2015) 62 Cal.4th 1, 24.) It is also " 'both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.' " (*People v. McCullough* (2013) 56 Cal.4th 589, 593.) Were the rule otherwise, a party would " ' " ' "be careful to be silent as to [their] objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal." ' " ' " (*People v. Simon* (2001) 25 Cal.4th 1082, 1103.)

Based on these rules, we reject Ali's challenges to Francis's and Age's statements and Palacios's testimony. (Cf. *People v. Vance* (2023) 94 Cal.App.5th 706, 713-714 (*Vance*) [forfeiture rules apply during section 1172.6 evidentiary hearings]; *People v. Schell* (2022) 84 Cal.App.5th 437, 444 [same].) At the beginning of the evidentiary hearing Ali objected that "double hearsay" in the preliminary hearing transcript was the "only evidence" against her. She did not direct the trial court's attention to any

specific statements or testimony in the transcript, however, nor did she challenge the court's explanation as to why what it saw as "double hearsay" was admissible.  She also did not object when the court detailed what evidence it considered when deciding her section 1172.6 motion.  Because Ali had ample opportunity to correct any potential error during the proceedings below but did not do so, her appellate challenges are forfeited.

*Burton's petition*

Burton contends the trial court considered inadmissible hearsay at the section 1172.6 evidentiary hearing, without which there is insufficient evidence that he aided and abetted the murder of Jackson.  For the reasons set forth above, we conclude Burton has forfeited any challenge to the court's admission of evidence at the evidentiary hearing.  The evidence is also sufficient to uphold the finding that Burton aided and abetted Jackson's murder.  (Cf. *Vance*, *supra*, 94 Cal.App.5th at p. 713 ["hearsay admitted without objection is substantial evidence sufficient to support a judgment"].)

A person is liable for aiding and abetting a murder if they " 'aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating its commission.' " (*In re Lopez* (2023) 14 Cal.5th 562, 579.) Whether the person has such liability " 'ordinarily is a question of fact.' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054 (*Nguyen*).) Among the factors to consider include " 'presence at the scene of the crime, companionship, and conduct before and after the offense.' " (*Ibid*.)

Reviewing the " ' " 'whole record in the light most favorable to the' " ' " trial court's denial of Burton's resentencing petition,

10

we conclude " ' " 'it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found [him] guilty beyond a reasonable doubt' " ' " of aiding and abetting Jackson's murder. (*Nguyen*, *supra*, 61 Cal.4th at pp. 1054-1055.) The evidence considered at the evidentiary hearing showed that Burton aided and encouraged the commission of Jackson's murder. Burton was present at the scene of the murder. He was with the actual perpetrator. When he, Ali, and Maxwell saw Jackson and Owens they approached and asked if they were members of a rival gang. When Jackson and Owens denied gang membership, the three feigned walking away before spinning around and opening fire. They then ran back to the vehicle where Allen was waiting.

The evidence also showed that Burton was aware of and shared Maxwell's unlawful purpose of killing Jackson. Prior to the murder Burton went to the territory of a rival gang with Maxwell, Allen, and Ali, intending to retaliate for the shooting of one of their fellow gang members. They were armed, and acted as if they were leaving before turning and opening fire. After the shooting Burton bragged that they had killed one person, but lamented that the other had gotten away. Considered together, these actions support the trial court's finding of a shared intent to kill between Burton and the actual perpetrator. Burton was therefore liable for aiding and abetting murder.[3] Denial of his section 1172.6 petition was proper.

---

[3] Given our conclusion we need not resolve Burton's contention that his admission of a firearm enhancement does not show that he was liable as the direct perpetrator of Jackson's murder.

## DISPOSITION

The April 7, 2023, orders denying Ali's and Burton's respective resentencing petitions are affirmed.

NOT TO BE PUBLISHED.


BALTODANO, J.


We concur:


GILBERT, P. J.


YEGAN, J.

Eleanor J. Hunter, Judge

Superior Court County of Los Angeles

_____

Heather J. Manolakas, under appointment by the Court of Appeal, for Defendant and Appellant Ashia Nakisia Ali.

Johanna Pirko, under appointment by the Court of Appeal, for Defendant and Appellant Antonio Dale Burton.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.